# EXHIBIT A

## CHANGE ENDORSEMENT

| Named Insured | | Endorsement Number |
|---|---|---|
| **Aluminum Recovery Technology, Inc.** | | **33** |
| Policy Number | Policy Period | Effective Date of Endorsemen |
| **EPRN0 915 8765** | **03/01/15 to 03/01/2016 at 12:01 AM** | **05/11/2015** |
| Issued By (Name of Insurance Company) | | |
| **ACE American Insurance Company** | | |

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

Effective 5/11/2015, the following is added to the policy as an Additional Named Insured and Loss Payee per the attached Loss Payable Clause Form CF 12 18 as their interest may appear.

Laurand Associates Inc.
11 Grace Avenue
Suite 405
Great Neck, NY 11021

As respects personal property.

**ACE American Insurance Company through Starr Technical Risks Agency, Inc.**

Chalice Kistian
Authorized Signature

## LOSS PAYABLE CLAUSE

**ISO**

**CF 12 18**
(Ed. 05 77)

| COMPANY | POLICY NO. |
|---|---|
| ACE American Insurance Company<br>through Starr Technical Risks Agency, Inc. | EPRN09158765 |

Loss, if any, shall be adjusted with the Insured and shall be payable to the Insured and <u>Laurand Associates Inc., 11 Grace Avenue, Suite 405, Great Neck, NY 11021</u> as their interests may appear.


As respects personal property.


**This Endorsement must be attached to Change Endorsement when issued after the Policy is written.**

**CF12 18** (Ed. 05 77)

## CHANGE ENDORSEMENT

| Named Insured | | Endorsement Number |
|---|---|---|
| **Aluminum Recovery Technology, Inc.** | | **32** |
| Policy Number | Policy Period | Effective Date of Endorsement |
| **EPRN0 915 8765** | **03/01/15 to 03/01/2016 at 12:01 AM** | **05/28/2015** |
| Issued By (Name of Insurance Company) | | Return Premium: |
| **ACE American Insurance Company** | | **($2,922)** |

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

Effective 5/28/2015, the Personal Property of Others Values are decreased by $1,000,000 for a revised total of $2,000,000.

Endorsement Premium Calculation:
Personal Property of Others- $1,000,000 x 0.385 x 0.759 pro rata factor = $2,922 Due Insured

Attached is a Revised Schedule of Locations and Specific Amounts of Insurance and Annual Premium Calculation.

**ACE American Insurance Company through Starr Technical Risks Agency, Inc.**

*Clarese Kestian*
Authorized Signature

## CHANGE ENDORSEMENT

| Named Insured | | Endorsement Number |
|---|---|---|
| **Aluminum Recovery Technology, Inc.** | | **32** |
| Policy Number | Policy Period | Effective Date of Endorsemen |
| **EPRN0 915 8765** | **03/01/15 to 03/01/2016 at 12:01 AM** | **05/28/2015** |
| Issued By (Name of Insurance Company) | | Return Premium: |
| **ACE American Insurance Company** | | **($2,922)** |

### REVISED SCHEDULE OF LOCATIONS AND SPECIFIC AMOUNTS OF INSURANCE

| Locations | Coverage by Location | Specific Amount of Insurance |
|---|---|---|
| 2170 Production Road, | Building | $2,642,616 |
| Kendallville, IN 46755 | Contents* | $3,816,840 |
| | Personal Property of Others | $2,000,000 |
| | Combined BI/EE | $1,630,000 |

* Contents include all machinery, equipment, tanks, inventory, fixtures and furniture, office equipment, and improvements and betterments.

### REVISED ANNUAL PREMIUM CALCULATION

| COVERAGE | AMOUNT | RATE | PREMIUM |
|---|---|---|---|
| Blanket Real and Personal Property | $8,459,456 | 0.385 | $32,542 |
| Combined Business Interruption/Extra Expense | $1,630,000 | 0.630 | $10,267 |
| | | Total | $42,809 |

## CHANGE ENDORSEMENT

| Named Insured | | Endorsement Number |
|---|---|---|
| **Aluminum Recovery Technology, Inc.** | | **31** |
| Policy Number | Policy Period | Effective Date of Endorsement |
| **EPRN0 915 8765** | **03/01/15 to 03/01/2016 at 12:01 AM** | **05/28/2015** |
| Issued By (Name of Insurance Company) | | Additional Premium: |
| **ACE American Insurance Company** | | **$2,922** |

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

Effective 5/28/2015, the Personal Property of Others Values are increased by $1,000,000 for a revised total of $3,000,000.

Endorsement Premium Calculation:
Personal Property of Others- $1,000,000 x 0.385 x 0.759 pro rata factor = $2,922 Due Company

Attached is a Revised Schedule of Locations and Specific Amounts of Insurance and Annual Premium Calculation.

**ACE American Insurance Company through Starr Technical Risks Agency, Inc.**

_Clara Kistian_
Authorized Signature

## CHANGE ENDORSEMENT

| Named Insured | | Endorsement Number |
|---|---|---|
| **Aluminum Recovery Technology, Inc.** | | **31** |

| Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|
| **EPRN0 915 8765** | **03/01/15 to  03/01/2016 at 12:01 AM** | **05/28/2015** |

| Issued By (Name of Insurance Company) | Additional Premium: |
|---|---|
| **ACE American Insurance Company** | **$2,922** |

### REVISED SCHEDULE OF LOCATIONS AND SPECIFIC AMOUNTS OF INSURANCE

| Locations | Coverage by Location | Specific Amount of Insurance |
|---|---|---|
| 2170 Production Road, | Building | $2,642,616 |
| Kendallville, IN  46755 | Contents* | $3,816,840 |
| | Personal Property of Others | $3,000,000 |
| | Combined BI/EE | $1,630,000 |

* Contents include all machinery, equipment, tanks, inventory, fixtures and furniture, office equipment, and improvements and betterments.

### REVISED ANNUAL PREMIUM CALCULATION

| COVERAGE | AMOUNT | RATE | PREMIUM |
|---|---|---|---|
| Blanket Real and Personal Property | $9,459,456 | 0.385 | $36,419 |
| Combined Business Interruption/Extra Expense | $1,630,000 | 0.630 | $10,267 |
| | | Total | $46,686 |

# RENEWAL ENDORSEMENT

| Named Insured | | Endorsement Number |
|---|---|---|
| **Aluminum Recovery Technology, Inc.** | | **30** |
| Policy Number | Policy Period | Effective Date of Endorsemen |
| **EPRN0 915 8765** | **03/01/15 to 03/01/2016 at 12:01 AM** | **03/01/2015** |
| Issued By (Name of Insurance Company) | | Renewal Premium: |
| **ACE American Insurance Company** | | **$42,809** |

## THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

Effective 3/1/2015 in consideration of an annual premium of **$42,809** now due and payable, the Policy is amended as follows:

The Policy Expiration date is extended to March 1, 2016 at 12:01 AM.

This renewal endorsement denotes the changes in terms and conditions for the policy period of 03/01/2015 at 12:01 AM to 03/01/2016 at 12:01 AM

Blanket Real and Personal Property Values are increased by $51,816 for a new total of $8,459,456.

Combined Business Interruption/Extra Expense has decreased by $242,500 for a new total of $1,630,000.

The Policy per occurrence Limit of Liability is amended to $10,089,456.

Paragraph v., of the Property Excluded section of the All Risks - General Conditions is amended to read:

v. Electrical transmission and distribution lines located beyond 1,000 ft. from any Insured premises are excluded.

Attached is a Revised Schedule of Locations and Specific Amounts of Insurance and Annual Premium Calculation.

Endorsement No. 5, Biological or Nuclear Exclusion Endorsement, is made null and void and replaced with the attached ACE Biological or Nuclear Exclusion Endorsement.

Endorsement No. 24, Terrorism Exclusion (for Certified Acts of Terrorism under the Terrorism Risk Insurance Act, as Amended) form #71330 (1/08), is made null and void and replaced with the attached Terrorism Exclusion (for Certified Acts of Terrorism under the Terrorism Risk Insurance Act, as Amended) form #61330 (1/15).

Endorsement No. 25, Total Terrorism Exclusion form #71331 (1/08), is made null and void and replaced with the attached Total Terrorism Exclusion form #61331 (1/15)

**ACE American Insurance Company through Starr Technical Risks Agency, Inc.**

Authorized Signature

## RENEWAL ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| **Aluminum Recovery Technology, Inc.** | **30** |

| Policy Number | Policy Period | Effective Date of Endorsemen |
|---|---|---|
| **EPRN0 915 8765** | **03/01/15 to 03/01/2016 at 12:01 AM** | **03/01/2015** |

| Issued By (Name of Insurance Company) | Renewal Premium: |
|---|---|
| **ACE American Insurance Company** | **$42,809** |

### SCHEDULE OF LOCATIONS AND SPECIFIC AMOUNTS OF INSURANCE

| Locations | Coverage by Location | Specific Amount of Insurance |
|---|---|---|
| 2170 Production Road, Kendallville, IN 46755 | Building | $2,642,616 |
| | Contents* | $3,816,840 |
| | Personal Property of Others | $2,000,000 |
| | Combined BI/EE | $1,630,000 |

\* Contents include all machinery, equipment, tanks, inventory, fixtures and furniture, office equipment, and improvements and betterments.

### ANNUAL PREMIUM CALCULATION

| COVERAGE | AMOUNT | RATE | PREMIUM |
|---|---|---|---|
| Blanket Real and Personal Property | $8,459,456 | 0.385 | $32,542 |
| Combined Business Interruption/Extra Expense | $1,630,000 | 0.630 | $10,267 |
| | | Total | $42,809 |

## RENEWAL ENDORSEMENT

| Named Insured | | Endorsement Number |
|---|---|---|
| **Aluminum Recovery Technology, Inc.** | | **30** |
| Policy Number | Policy Period | Effective Date of Endorsement |
| **EPRN0 915 8765** | **03/01/15 to 03/01/2016 at 12:01 AM** | **03/01/2015** |
| Issued By (Name of Insurance Company) | | Renewal Premium: |
| **ACE American Insurance Company** | | **$42,809** |

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

### ACE USA BIOLOGICAL OR NUCLEAR EXCLUSION ENDOSEMENT

The following exclusion is added to this policy; supersedes any term, provision or endorsement to the contrary in this policy; and applies notwithstanding such term, provision or endorsement:

- BIOLOGICAL OR NUCLEAR EXCLUSION

    This policy does not insure against any loss, damage, cost or expense caused by or resulting from any of the following, regardless of any other cause or event contributing concurrently or in any sequence thereto:

    1.   The unlawful possession, use, release, discharge, dispersal or disposal of any bacteriological, viral, radioactive or similar agents or material regardless of who is responsible for the act, whether or not the act is certified as an act of terrorism pursuant to the federal Terrorism Risk Insurance Act, and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto; or

    2.   The unlawful possession, use, release, discharge, detonation, dispersal or disposal of any device or material capable of producing a nuclear reaction or the spread of radioactivity, regardless of who is responsible for the act, whether or not the act is certified as an act of terrorism pursuant to the federal Terrorism Risk Insurance Act, and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

All other terms and conditions remain unchanged.

## RENEWAL ENDORSEMENT

| Named Insured | | Endorsement Number |
|---|---|---|
| **Aluminum Recovery Technology, Inc.** | | **30** |
| Policy Number | Policy Period | Effective Date of Endorsement |
| **EPRN0 915 8765** | **03/01/15 to 03/01/2016 at 12:01 AM** | **03/01/2015** |
| Issued By (Name of Insurance Company) | | Renewal Premium: |
| **ACE American Insurance Company** | | **$42,809** |

### TERRORISM EXCLUSION
### (FOR CERTIFIED ACTS OF TERRORISM UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED)

This Policy excludes loss, damage, cost or expense, arising directly or indirectly as a result of a "certified act of terrorism" as defined by the Terrorism Risk Insurance Act of 2002, as amended ("the Act"), and any revisions or amendments thereto, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For purposes of this endorsement and in compliance with the Act, "certified act of terrorism" shall mean an act that is certified by the Secretary of the Treasury in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the Act. The criteria contained in that Act for a "certified act of terrorism" include the following:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

However, if an act of terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire, this Company will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy to the lesser of the actual cash value of the property at the time of the loss, or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

With respect to fire resulting from any one or more acts of terrorism, this Company will not pay any amounts for which this Company is not responsible under the terms of the Act (including subsequent Congressional action pursuant to the Act) due to the application of Section 103 of the Act or any clause that results in a cap on our liability for payments for terrorism losses.

**THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, COVERAGE MAY BE REDUCED.**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Form #61330 (1/15)

## RENEWAL ENDORSEMENT

| Named Insured | | Endorsement Number |
|---|---|---|
| **Aluminum Recovery Technology, Inc.** | | **30** |
| Policy Number | Policy Period | Effective Date of Endorsement |
| **EPRN0 915 8765** | **03/01/15 to 03/01/2016 at 12:01 AM** | **03/01/2015** |
| Issued By (Name of Insurance Company) | | Renewal Premium: |
| **ACE American Insurance Company** | | **$42,809** |

### TOTAL TERRORISM EXCLUSION

This Endorsement only applies in the United States of America and its Territories and Possessions.

Notwithstanding any provision to the contrary within this Policy or any endorsement thereto, it is agreed that this Policy excludes loss, damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from, or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement, an "act of terrorism" means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from, or in connection with any action taken in controlling, preventing, suppressing, or in any way relating to any act of terrorism.

However, if an act of terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire, this Company will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy to the lesser of the actual cash value of the property at the time of the loss, or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

With respect to fire resulting from any one or more "certified acts of terrorism" as defined under the Federal Terrorism Risk Insurance Act of 2002, as amended ("the Act"), this Company will not pay any amounts for which this Company is not responsible under the terms of the Act (including subsequent Congressional action pursuant to the Act) due to the application of Section 103 of the Act or any clause that results in a cap on our liability for payments for terrorism losses.

**THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILTY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, COVERAGE MAY BE REDUCED.**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Form # 61331 (1/15)

## CHANGE ENDORSEMENT

| Named Insured | | Endorsement Number |
|---|---|---|
| Aluminum Recovery Technology, Inc. | | 29 |
| **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| EPRN0 915 8765 | 3/01/2014 to 3/01/2015 at 12:01 AM | 5/9/2014 |
| **Issued By (Name of Insurance Company)** | | **Additional Premium** $4,483 |
| ACE American Insurance Company | | |

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

Effective 5/9/2014, the Personal Property values are increased by $1,490,000 for a revised total of $2,000,000.

Endorsement Premium Calculation:
Personal Property- $1,490,000 x .371 x .811 pro rata factor = $4,483 Due Company

Attached are the updated Schedule of Locations and Specific Amounts of Insurance and Annual Premium Calculation.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

ACE American Insurance Company
through Starr Technical Risks Agency, Inc.

## SCHEDULE OF LOCATIONS AND SPECIFIC AMOUNTS OF INSURANCE

| Locations | Coverage by Location | Specific Amount of Insurance |
|---|---|---|
| 2170 Production Road, Kendallville, IN 46755 | Building | $2,590,800 |
| | Contents* | $3,816,840 |
| | Personal Property of Others | $2,000,000 |
| | Combined BI/EE | $1,872,500 |

\* Contents include all machinery, equipment, tanks, inventory, fixtures and furniture, office equipment, and improvements and betterments.

## ANNUAL PREMIUM CALCULATION

| COVERAGE | AMOUNT | RATE | PREMIUM |
|---|---|---|---|
| Blanket Real and Personal Property | $8,407,640 | 0.371 | $31,192 |
| Combined Business Interruption/Extra Expense | $1,872,500 | 0.621 | $11,629 |
| | | Total | $42,821 |

Renewing or in lieu of: EPRN05101918

**ACE American Insurance Company**
**436 Walnut Street**
**Philadelphia, PA 19106**

**POLICY NO:** EPRN09158765

| ACE USA PROPERTY | DECLARATIONS |
|---|---|

| | Commission:15% | Service Office: Chicago, Illinois |
|---|---|---|

| **Insured:** | Aluminum Recovery Technology, Inc. | **Producer:** | Burns & Wilcox Ltd. |
|---|---|---|---|
| **Address:** | 2170 Production Road Kendallville, IN 46755 | **Address:** | 530 Maryville Centre Drive, Suite 450 St. Louis, MO 63141 |

**Policy Period:** From 03/01/2014 at 12:01 A.M., to 03/01/2015 at 12:01 A.M. Standard Time at place of issuance.

To the extent that coverage in this policy replaces coverage in other policies terminating at noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.

The insurance afforded is only with respect to the specific part and coverages therein, the full title of which is set forth below the caption "Form."

| PERILS INSURED | COVERAGE PROVIDED | FORM | LIMIT OF LIABILITY | PREMIUM (Gross Annual) |
|---|---|---|---|---|
| AS PER FORMS AND ENDORSEMENTS ATTACHED | AS PER FORMS AND ENDORSEMENTS ATTACHED | AS PER FORMS AND ENDORSEMENTS ATTACHED | AS PER THE ATTACHED SCHEDULE OF LOCATIONS AND SPECIFIC AMOUNTS OF INSURANCE NOT TO EXCEED $8,790,140 IN ANY OCCURRENCE. | $37,293.00 |
| | | | CERTIFIED TERRORISM NON-CERTIFIED TERRORISM | $0.00 $0.00 |

| ISSUED: STARR TECHNICAL RISKS AGENCY, INC. | **TOTAL** | $37,293.00 |
|---|---|---|

Endorsements attached to policy at inception: Common Policy Conditions (IL00171198), Commercial Property Conditions (CP00900788), OFAC Advisory Notice to Policyholders (ILP0010104). See Schedule of Forms and Endorsements.

Surcharges at inception:

| None | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | **TOTAL SURCHARGES** | | $0.00 |

Signature of Authorized Agent          Located at Chicago, Illinois          3/28/2014

UW6033B

This Declaration and Form(s), with Policy Standard Conditions and Endorsements, if any, issued to form a part thereof, completes the above numbered policy.

**PARTICIPATION CLAUSE:**
100%

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 □

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

2. The coverage territory is:

   a. The United States of America (including its territories and possessions);

   b. Puerto Rico; and

   c. Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

   Copyright, ISO Commercial Risk Services, Inc., 1983, 1987   **CP 00 90 07 88**   □

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

**as** "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# Schedule of Forms and Endorsements

Named Insured .............................. Aluminum Recovery Technology, Inc.

Policy Number ............................. EPR N0 9158765

Effective Date .............................. 03/01/2014

This Policy is made up of these Declarations and the following Schedules, Forms and Endorsements:

### Description

- ACE Declarations
- Common Policy Conditions
- Commercial Property Conditions
- US Treasury Department's Office of Foreign Assets Control (OFAC) Notice to Policyholders
- Schedule of Forms and Endorsements
- Schedule of Locations and Specific Amounts of Insurance and Annual Premium Calculation
- Declarations
- All Risks – General Conditions
- Property Section
- ACE Endorsements:
    1. Accounts Receivable Endorsement
    2. Asbestos Exclusion Endorsement
    3. Authorities Endorsement
    4. Automatic Coverage Endorsement
    5. Biological or Nuclear Exclusion Endorsement
    6. Boiler and Machinery Endorsement
    7. Bridge Wording Endorsement
    8. Combined Business Interruption and Extra Expense Insurance Endorsement
    9. Course of Construction Endorsement
    10. Data Distortion/Corruption Endorsement (Combined)
    11. Electronic Data Processing Endorsement
    12. Electronic Date Recognition Endorsement
    13. Exhibition, Exposition, Fair or Trade Show Endorsement
    14. Fine Arts Endorsement
    15. Fire Fighting Extinguishing Expense
    16. Increased Cost of Construction & Demolition Endorsement
    17. Ingress/Egress Endorsement
    18. Leasehold Interest Endorsement
    19. Lender's Loss Payable Endorsement
    20. Mold Exclusion Endorsement
    21. Political Risk Endorsement
    22. Replacement Cost Endorsement
    23. Standard Mortgage Endorsement

24. Terrorism Exclusion
25. Total Terrorism Exclusion
26. Trade or Economic Sanctions Endorsement
27. Valuable Papers and Records Endorsement
28. Signatures Endorsement

- State Amendatory Endorsements –Indiana
- Claims Notification

## SCHEDULE OF LOCATIONS AND SPECIFIC AMOUNTS OF INSURANCE

It is hereby understood and agreed that the following locations and for the specific amounts of insurance shown are insured under this policy for loss, damage or expense arising out of any one occurrence. All policy sublimits are part of, not in addition to the below specific amounts of insurance.

| Locations | Coverage by Location | Specific Amount of Insurance |
|---|---|---|
| 2170 Production Road, Kendallville, IN 46755 | Building | $2,590,800 |
| | Contents* | $3,816,840 |
| | Personal Property of Others | $ 510,000 |
| | Combined BI/EE | $1,872,500 |

* Contents include all machinery, equipment, tanks, inventory, fixtures and furniture, office equipment, and improvements and betterments.

## ANNUAL PREMIUM CALCULATION

| COVERAGE | AMOUNT | RATE | PREMIUM |
|---|---|---|---|
| Blanket Real and Personal Property | $6,917,640 | 0.371 | $25,664 |
| Combined Business Interruption/Extra Expense | $1,872,500 | 0.621 | $11,629 |
| | | Total | $37,293 |

**DECLARATIONS**

**POLICY NUMBER:**

EPRN09158765

**NAMED INSURED:**

Aluminum Recovery Technology, Inc.

**MAILING ADDRESS:**

2170 Production Road
Kendallville, IN 46755

**LOSS PAYABLE CLAUSE:**

LOSS, IF ANY, TO BE ADJUSTED WITH AND PAYABLE TO INSURED, WHOSE RECEIPT SHALL CONSTITUTE A RELEASE IN FULL OF ALL LIABILITY UNDER THIS POLICY AS REGARDS SUCH LOSS.

**TERM OF INSURANCE:**

FROM  03/01/2014 TO 03/01/2015 AT 12:01 A.M. STANDARD TIME AT THE ABOVE MAILING ADDRESS

**PREMIUM:**

$37,293

**LIMIT OF LIABILITY:**

THE LIMIT OF LIABILITY UNDER THIS POLICY SHALL IN NO EVENT EXCEED THE PER LOCATION AMOUNTS SHOWN ON THE SCHEDULE OF LOCATIONS AND SPECIFIC AMOUNTS OF INSURANCE ENDORSEMENT

**POLICY LIMIT OF LIABILITY:**

AS PER THE ATTACHED SCHEDULE OF LOCATIONS AND SPECIFIC AMOUNTS OF INSURANCE NOT TO EXCEED $8,790,140 IN ANY ONE OCCURRENCE.

**SUBLIMITS:**
(SUBLIMITS ARE PART OF, NOT IN ADDITION TO THE PER LOCATION LIMITS AS SHOWN ON THE SCHEDULE OF LOCATIONS AND SPECIFIC AMOUNTS OF INSURANCE ENDORSEMENT)

BUSINESS INTERRUPTION/EXTRA EXPENSE COMBINED:

EARTHQUAKE/EARTH MOVEMENT:     $1,872,500

FLOOD:     NO COVERAGE

     NO COVERAGE

DEBRIS REMOVAL:

THE GREATER OF 25% OF ADJUSTED DIRECT PROPERTY LOSS OR $500,000

AUTOMATIC COVERAGE:     $ 1,000,000

ACCOUNTS RECEIVABLE:     $ 100,000

CIVIL/MILITARY AUTHORITY:     4 CONSECUTIVE WEEKS

DEMOLITION & INCREASED COST OF CONSTRUCTION COMBINED:     $500,000

EDP EQUIPMENT & MEDIA COMBINED:     $50,000

FAIRS, EXHIBITIONS, AND TRADE SHOWS:     $ 5,000

FINE ARTS:     $ 5,000

| FIRE BRIGADE CHARGES: | $ 10,000 |
| INGRESS/EGRESS: | 2 CONSECUTIVE WEEKS |
| LEASEHOLD INTEREST: | $ 25,000 |
| POLLUTION CLEANUP (PROPERTY DAMAGE AND BUSINESS INTERRUPTION): | $ 50,000 (Annual Aggregate) Combined |
| PROPERTY IN COURSE OF CONSTRUCTION: | $ 50,000 |
| VALUABLE PAPERS AND RECORDS: | $ 50,000 |

<u>BOILER & MACHINERY ENDORSEMENT</u>

| AMMONIA CONTAMINATION | $ 25,000 | (any One accident) |
| EXPEDITING ESPENSES | $ 50,000 | (any One accident) |
| HAZARDOUS SUBSTANCES | $ 50,000 | (any One accident) |
| WATER DAMAGE | $ 50,000 | (any One accident) |
| CONSEQUENTIAL DAMAGE | $ 25,000 | (any One accident) |

**DEDUCTIBLES:** All deductibles listed below are per occurrence except with respect to coverage provided under the Boiler & Machinery Endorsement (if provided) which shall be any One Accident.

<u>PROPERTY DAMAGE:</u>  $10,000   except

<u>TIME ELEMENT:</u>  10 times 100% plant average daily value* subject to a minimum of $50,000

TIME ELEMENT (Including but limited to Business Interruption, Extra Expense, Leasehold Interest).

*As respects Time Element, with respect to all claims for loss, damage, or expense arising out of any one occurrence, from the total amount of any loss, damage or expense for which the Company would be liable, there shall first be deducted the amount obtained by multiplying "The 100% Plant Business Interruption Daily Value" declared by the Insured at the time of loss by the factor of <u>10</u> and the insurance under said item shall not apply to any part of such amount deducted.

"The100% Plant Business Interruption Daily Value" declared by the Insured at the time of such loss, damage or expense as described above shall mean the actual amount of Gross Earnings, less charges and expenses which do not necessarily continue during the interruption of business, that would have been earned had no loss or damage occurred, divided by the actual number of working days, had no loss occurred during the period of interruption of the business with due consideration being given to the experience of the business before the date of loss or damage and the probable experience thereafter had no loss occurred.

As respects real and personal property , all claims for loss, damage or expense arising out of any one occurrence shall be adjusted as one claim and from the amount of each such adjusted claim there shall be deducted the sum stated on the Declarations Page.

Deductibles for Property Damage and Time Element/Extra Expense shall be applied separately.

COINSURANCE:  Property Damage 90%
Time Element: 90% / Extra Expense 4-8-10%

LOCATIONS COVERED:  SEE SCHEDULE ATTACHED

INSURANCE COMPANY:  ACE American Insurance Company
(HEREINAFTER THIS COMPANY)

ISSUED AT:  STARR TECHNICAL RISKS AGENCY, INC.
500 W. MONROE, SUITE 3100
CHICAGO, IL 60661

FOR THE COMPANY

# ALL RISKS - GENERAL CONDITIONS

**COVERAGE: PERILS INSURED AGAINST:**

This Policy covers the property insured hereunder against all risks of direct physical loss or damage occurring during the period of this Policy from any external cause, except as hereinafter excluded or limited.

**LIMITS OF LIABILITY:**

Where this Policy is written as part of a total insurance package for the Insured, or where this Company participates under a schedule of insurance, recording the individual percentages of participation of the respective insurers (or their respective parts per total or part per limits), it is expressly understood and agreed that the schedule of insurance shall act to specifically limit this Company's limit of liability, whether or not such schedule is delivered to the Insured.

**DEDUCTIBLES:**

As respects real and personal property, all claims for loss, damage or expense arising out of any one occurrence, shall be adjusted as one claim and from the amount of each such adjusted claim there shall be deducted the sum of $10,000.

All claims for loss, damage or expense arising out of any one flood occurrence, shall be adjusted as one claim, and from the amount of each such adjusted claim there shall be deducted the sum stated on Declarations Page.

As respects Time Element, with respect to all claims for loss, damage, or expense arising out of any one occurrence, from the total amount of any loss, damage or expense for which the Company would be liable, there shall first be deducted the amount obtained by multiplying "The 100% Plant Business Interruption Daily Value" declared by the Insured at the time of loss by the factor of 10 and the insurance under said item shall not apply to any part of such amount deducted.

"The 100% Plant Business Interruption Daily Value" declared by the Insured at the time of such loss, damage or expense as described above shall mean the actual amount of Gross Earnings, less charges and expenses which do not necessarily continue during the interruption of business, that would have been earned by the entire location or facility had no loss or damage occurred, divided by the actual number of working days, had no loss occurred during the period of interruption of the business with due consideration being given to the experience of the business before the date of loss or damage and the probable experience thereafter had no loss occurred.

As respects real and personal property, all claims for loss, damage or expense arising out of any one occurrence shall be adjusted as one claim and from the amount of each such adjusted claim there shall be deducted the sum stated on the Declarations Page.

Deductibles for Property Damage and Time Element shall be applied separately.

**COINSURANCE:**

a.  Applicable to Property Section:

It is expressly stipulated and made a condition of this Policy that the Insured shall at all times maintain contributing insurance on each item of property covered by this Policy to the extent of at least the percentage specified on the Declarations Page of the value required per the terms and conditions of the Valuation Clause in this Policy at the time of loss, and that failing to do so, the Insured shall to the extent of such deficit bear his, or their proportion of any loss.

In the event that the aggregate claim for any loss is less than $10,000. and less than 2% of the total amount of insurance upon the property described herein at the time such loss occurs, the Insured shall not be required to furnish any inventory of the undamaged property to establish compliance with the Valuation Clause, provided however, that nothing herein shall be construed to waive the application of the Coinsurance Clause.

b.    Applicable to Business Interruption Section:

This Company shall be liable, in the event of loss, for no greater proportion thereof than the amount hereby covered bears to the percentage specified on the Declarations Page of the Gross Earnings that would have been earned had no loss occurred during the twelve (12) months immediately following the date of damage to or destruction of the described property.

## PROPERTY EXCLUDED:

This Policy does not cover:

a.    Currency, money, deeds, evidence of debt or title, notes, securities, jewelry, precious stones, furs, fine arts, valuable papers, accounts receivable, accounts, bills, semi-precious stones, gold, silver, platinum and other precious alloys or metals, (except coverage is provided for precious metals and alloys on the premises which are part of any catalyst subject to the limitations specified under paragraph r. of Property Excluded), unless endorsed hereon;

b.    Property while in transit, unless endorsed hereon;

c.    Data processing equipment and media, except for damage and destruction directly resulting from the perils of fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, flood, earthquake, collapse;

d.    Land, land values, landscaping, roads, lawns, trees, plants, shrubs, standing timber, crops, atmosphere, any water course or body of water whether above or below ground, or the restoration or replacement of any of the above;

e.    Cost of grading, excavations and fillings;

f.    Architect's fees;

g.    Piers, docks, wharves, retaining walls, bulkheads, breakwaters, riprap, (including pilings and breasting dolphins), unless specifically endorsed hereon;

h.    Brick, stone or concrete foundations, including pilings of buildings or structures which are below the surface of the lowest pit or basement floor, or where there is no pit or basement, which are below the surface of the ground inside the foundation walls of the buildings or structures;

i.    Brick, stone or concrete foundations of machinery or equipment which are below the surface of the ground;

j.    Underground and underwater piping, fittings, conduits, drains or flues, and contents; underground tanks, caverns, subterranean strata and their contents;

k.    Aircraft and their contents;

l.    Motor vehicles or trailers licensed for use on public highways and their contents (except contents on described premises consigned to or to be shipped by the Insured while not under control of common carrier);

m.  Hulls or water borne vessels of every type, nature and description and their contents;

n.  Railroad or railway rolling stock and contents (except contents on described premises consigned to or to be shipped by the Insured while not under control of public carrier);

o.  Earthen, concrete and all other types of storage pits or reservoirs and their contents;

p.  All property specifically insured elsewhere;

q.  Property in course of construction away from described premises;

r.  Any refractory lining or catalyst, except for damage or destruction directly resulting from the perils of fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, flood, earthquake;

s.  Crude oil, natural gas or other minerals prior to initial recovery above ground;

t.  Drilling and producing platforms, including rigs, derricks and equipment;

u.  Property located offshore or beyond the shoreline (in Gulf of Mexico off Texas and Louisiana, "offshore and beyond the shoreline" is to seaward of the inland edge of the Lease Block of the Plane Coordinate System, as defined on United States Department of the Interior, Bureau of Land Management Offshore Leasing Maps. Elsewhere, offshore shall mean the sea coasts of United States including Alaska), except that structures (and their contents) extending from land or shore are not to be considered as offshore;

v.  Electrical transmission and distribution lines.

w.  Damage to property in open air from wind, rain, or hail unless such property is designed to function without the protection of walls or roof.

## PERILS EXCLUDED:

This Policy does not insure against loss, damage or expense caused by or resulting from:

a.  Infidelity or dishonesty of the Insured or any of its employees, or others to whom the insured property may be entrusted; nor loss or damage resulting from the Insured voluntarily parting with title or possession of any property if induced to do so by any fraudulent scheme, trick, device or false pretense; nor any unexplained loss, mysterious disappearance, or loss or shortage disclosed on taking inventory, or resulting from accounting errors; burglary or theft by an employee;

b.  Faulty or defective material, faulty workmanship, faulty methods of construction, errors or omissions in plan or specification design or errors in processing, unless loss by a peril not otherwise excluded ensues, and then only for the ensuing loss;

c.  Mechanical or machinery breakdown, disassociation or derangement, including rupture or bursting caused by centrifugal force, nor rupture, bursting or operation of pressure relief devices;

d.  Electrical failure, electrical injury or disturbance to electrical appliances, devices, fixtures, or wiring caused by electrical currents artificially generated, unless fire or explosion ensues and then only for the actual loss or damage directly caused by such ensuing fire or explosion;

e.   Explosion, bulging, rupture, cracking or bursting of steam boilers, or steam pipes, or steam turbines, or steam engines, or flywheels, if owned by, leased by or operated under the control of the Insured; and bulging or cracking of fired and unfired pressure vessels, except that this Company shall be liable for direct explosion loss caused by internal pressure of steam in processing machinery, equipment or apparatus, and direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox (or combustion chamber) of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom;

f.   Gradual deterioration, depletion, inherent vice, latent defect, termites, moth, vermin, wear and tear, dampness or dryness of atmosphere, extremes or changes of temperature, smog, shrinkage, evaporation, loss of weight, rust, corrosion, erosion, wet or dry rot, change in flavor or color or texture or finish, unless such loss is caused directly by physical damage not otherwise excluded in this Policy to the property covered;

g.   Settling, cracking, shrinkage, bulging or expansion in foundations, walls, floors or ceilings;

h.   Delay or loss of use or market except as may be provided under Business Interruption coverage if provided herein;

i.   Conversion, embezzlement or secretion by any person in lawful possession of the property or failure of such persons to return property loaned, rented or placed in their care;

j.   Enforcement of any ordinance or law regulating the construction, repair or demolition of any property insured hereunder, except as specifically stated herein or by endorsement;

k.   Evaporation, mixing, shortage, seepage, spillage or leakage unless resulting from direct physical loss or damage to the tanks, taps or pipes by an insured peril, except as insured under standard vandalism provisions;

l.   1.   Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack, a) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; b) by military, naval or air forces; c) by an agent of any such government, power, authority or forces;

2.   Any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

3.   Insurrection, rebellion, revolution, civil war, usurped power, or action taken in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or Customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade;

m.   Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy; however, subject to the foregoing and all provisions of this Policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this Policy;

n.   Freezing of plumbing, heating or fire protection systems in vacant properties;

o.   Backing up of sewers or drains;

p.  Damage sustained to insured property directly resulting from maintenance, repairs, or alterations, unless loss by a peril not otherwise excluded ensues, and then only for the ensuing loss;

q.  Earth movement, including but not limited to earthquake, volcanic action, landslide, mud flow, earth sinking, earth rising or shifting, unless endorsed hereon;

r.  Flood, as defined herein, unless endorsed hereon.

VALUATION:

In case of loss, the basis of adjustment, unless otherwise endorsed hereon, shall be as follows (Actual Cash Value as used in this Policy is defined as replacement cost less depreciation):

a.  Finished goods sold but not delivered, at the Insured's net selling price of such property at the time and place of such loss less all discounts and unincurred expenses to which such property would have been subject had no loss occurred. Finished goods not sold, at replacement cost. (Finished goods shall be those goods on which the Insured, or others for the account of the Insured, shall have completed work to the extent that such goods are in a state ready for sale, normal to the business of the Insured). Raw stock and stock in process, at replacement cost with like kind and quality, at the time and place of loss;

b.  Buildings and other structures, at Actual Cash Value unless otherwise endorsed hereon;

c.  Machinery, equipment and any other insured property not otherwise provided for at Actual Cash Value at time and place of loss unless otherwise endorsed hereon;

d.  Catalyst at Actual Cash Value at the time and place of loss;

e.  Time element and stock reporting coverages per specific section.

LIMITATIONS:

a.  Books and Records

This Policy limits coverage on books of account, abstracts, drawings, card index systems and other records (except film, tape, disk, drum, cell and other magnetic recording and storage media for electronic data processing), to not exceeding the cost of blank books, cards or other blank materials plus the cost of labor incurred by the Insured for transcribing or copying such records; and on film, tape, disk, drum, cell and other magnetic recording and storage media for electronic data processing to not exceeding the cost of such media in unexposed or blank form.

b.  Employee's Tools and Wearing Apparel

This Policy also covers tools and wearing apparel of officers and employees, except in dwellings and living quarters, while on premises insured hereunder, subject to a limit of two hundred fifty dollars ($250.00) on said property of any officer or employee in any one loss.

DEFINITION OF OCCURRENCE:

Occurrence, as used in this Policy, is defined as follows:

The term "occurrence" shall mean an event or a continuous exposure to conditions which causes direct physical loss or damage or destruction to property insured. All damages or destruction resulting from a common cause, or from exposure to substantially the same conditions, shall be deemed to result from one "occurrence" except as modified herein.

a.    In respect of losses hereunder arising from tornado, cyclone, hurricane, windstorm or hail, the term "occurrence" shall mean the sum total of all the Insured's losses sustained during any one period of seventy-two (72) consecutive hours commencing within the term of this Policy under the foregoing perils arising out of or caused by the same atmospheric disturbance.

b.    In respect of losses hereunder arising from riot, riot attending a strike or civil commotion, the term "occurrence" shall mean the sum total of all the Insured's losses sustained during any one period of seventy-two (72) consecutive hours commencing within the term of this Policy.

c.    Each loss by earthquake or volcanic action shall constitute a single claim hereunder, provided, if more than one earthquake shock or volcanic action shall occur within any period of seventy-two (72) hours during the term of this Policy, such earthquake shocks or volcanic actions shall be deemed to be a single loss within the meaning hereof. This Company shall not be liable for any loss caused by any earthquake shock or volcanic action occurring before the effective date and time of this Policy, nor for any loss occurring after the expiration date and time of this Policy.

d.    The term Flood shall mean waves, storm surge, tide or tidal waves and the rising (including the overflowing or breaking of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams or similar bodies of water, the unusual and rapid accumulation or runoff of surface waters from any source, all whether driven by wind or not. With respect to the peril of Flood, any and all losses from this cause within a seventy-two (72) hour period shall be deemed to be one loss.

As respects all the foregoing, no single elected seventy-two (72) hour period shall overlap any other elected seventy-two (72) hour period and the Insured may elect the moment from which any period of seventy-two (72) consecutive hours shall be deemed to have commenced, this Company being responsible only for its proportion of the loss to the Insured in respect to the said elected period of seventy-two (72) hours.

## CONDITIONS:

a.    Requirements in Case Loss Occurs:

Every loss hereunder shall be reported in writing as soon as practicable with full particulars to the Company through <u>Starr Technical Risks Agency, Inc.</u> The Insured shall protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, value and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by this Company, the Insured shall render to this Company a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

1.    The time and origin of the loss;

2.    The interest of the Insured and of all others in the property;

3.    The value of each item thereof and the amount of loss thereto;

4.    All encumbrances thereon;

5.    All other contracts of insurance whether valid or not, covering any of said property;

6.    Any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this Policy;

7.    By whom and for what purposes any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground.

If this Policy provides any Business Interruption coverage, the Insured shall, in addition to the above, also give immediate written notice to this Company through Starr Technical Risks Agency, Inc., of any Business Interruption loss and protect the property from further damage that might result in extension of the period of interruption; and within sixty (60) days following the date of damage to or destruction of the real or personal property described, unless such time is extended in writing by this Company, the Insured shall render to this Company a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

1.    The time and origin of the property damage or destruction causing the interruption of business;

2.    The interest of the Insured and of all others in the business;

3.    All other contracts of insurance, whether valid or not, covering in any manner the loss insured against by this Policy;

4.    Any changes in the title, nature, location, encumbrance, or possession of said business since the issuing of this Policy; and

5.    By whom and for what purpose any building herein described and the several parts thereof were occupied at the time of damage or destruction, and shall furnish a copy of all the descriptions and schedules in all policies, and the actual amount of Business Interruption value and loss claimed, accompanied by detailed exhibits of all values, costs, and estimates upon which such amounts are based.

The Insured shall furnish a copy of all the descriptions and schedules in all policies and if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The Insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and shall submit and insofar as is within its power, cause its employees and others to submit to examinations under oath by any person named by this Company and subscribed to the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.

b.    Permission Clause:

Permission is hereby granted: 1) to do work and to make such changes in the use or occupancy of the premises as is usual or incidental to the business of the Insured, 2) to make alterations, additions, improvements and repairs, 3) to shut down or cease operations and for individual buildings or units to remain vacant or unoccupied without limit of time. But this Company, unless endorsed hereon, shall not be liable for loss occurring:

1.    when the entire building or plant has ceased operations or been unoccupied or vacant for a period exceeding thirty (30) days at any one time, or

2.    while the hazard is increased by any means within the control or knowledge of the insured.

c.    Foam Loss Assumption Clause:

This Company shall be liable for the loss to foam or other fire extinguishing materials lost, expended, or destroyed in fighting fire, involving property insured hereunder, including the loss to similar material which may be brought on the premises for the purpose of extinguishing a fire already in progress at the time such materials are ordered and delivered, but the liability shall not exceed the combined value of such extinguishing materials which are on the premises, or on adjacent premises if such materials are jointly owned, at the time the fire originates.

If there shall be any other fire insurance on the property insured hereunder, this Company shall only be liable pro-rata with such other insurance whether such other insurance be against loss covered hereunder or not, and this Company shall only be liable pro-rata with all insurance covering in any manner the hazards or loss insured against by this Policy anything in this Policy to the contrary notwithstanding.

d.    Debris Removal Clause:  (Applies only to insurance covering direct property loss.)

This insurance will pay the necessary expense incurred by the Insured during the term of this Policy for the removal of debris of the property covered hereunder from premises covered hereunder which may be occasioned by insured loss caused by any of the perils insured against in this Policy.  The total liability in any one occurrence under this Policy for removal of debris shall not exceed the amounts specified on the Declarations Page under the Limits of Liability.  This provision does not increase any amounts or limits of insurance in this Policy.  In no event shall the combined loss for property and debris removal exceed the amount of insurance applying under the Policy to the property damaged.

Furthermore, the Company shall not be liable for more than the proportion of such debris removal expense as the amount of insurance under this Policy bears to the total amount of insurance on the property covered, whether or not all such insurance includes this clause, or is collectible or not.  This insurance will not pay, under this clause, expenses to:

1.    Remove pollutants, or debris defined as a Pollutant, from land or water, nor remove, restore or replace polluted land or water; or

2.    Remove any property because of the enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, demolition, occupancy, operation or other use of such property; or

3.    Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants, whether or not such removal, transport, or decontamination is required by law or regulation; or

4.    Remove any property or debris which discharges, releases, or escapes into or upon any watercourse or body of water above or below ground, on or off the insured premises.

No liability shall exist under this Debris Removal Clause unless such expenses are reported in writing to the Company within one hundred and eighty (180) days of the date of direct loss.

e.    Pollution Exclusion Clause:

This Policy does not insure against loss caused by or resulting from the release, discharge or dispersal of Pollutants on the Insured's premises during the term of this Policy unless the release, discharge or dispersal is caused by fire, lightning, windstorm, hail, leakage from fire protective equipment, explosion, aircraft, vehicles, smoke, sonic shock wave, riot, civil commotion or vandalism.  This Policy does not insure off-premises cleanup costs from any cause and the coverage afforded by this clause shall not be construed otherwise.

f.     Pollution Cleanup:

This Policy is extended to cover the expenses actually incurred by the Insured to cleanup and remove debris defined as a Pollutant and other Pollutants from land or water on covered premises if the release, discharge, dispersal, migration, or seepage of these substances results from any loss or damage occurring during the term of this Policy caused by perils specified in the "Pollution Exclusion Clause" herein subject to an annual aggregate sublimit of $50,000 combined Property Damage and Business Interruption.

g.     Definition of Pollutants:

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, bacteria, fungi, virus, waste, (waste includes materials to be recycled, reconditioned or reclaimed) or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the U.S. Environmental Protection Agency.

h.     Asbestos Removal:

This Policy does not insure against:

1.     asbestos material removal, unless the asbestos itself is damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective systems;

2.     demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos material; or

3.     any governmental direction or request declaring that asbestos material present in or part of or utilized on any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

i.     Power Failure Loss Exclusion Clause:

This Company shall not be liable for loss caused directly or indirectly by the interruption of power or other utility service furnished to the described premises if the interruption takes place away from the described premises. If a peril insured against ensues on the described premises, this Company shall be liable for only its proportion of loss caused by the ensuing peril.

j.     Other Insurance:

1.     Contributing Insurance Clause:

Permission is granted for other insurance written on the same plan, terms, conditions and provisions as those contained in the form attached to this Policy. This insurance shall contribute, in accordance with the Pro-Rata Liability Clause of this Policy against any peril insured by this Policy or its riders only with other insurance as defined above.

2.     Specific Insurance Clause:

Permission is granted for other insurance, being insurance other than that described in the Contributing Insurance Clause.

3.    Excess Clause:

This Policy does not attach to or become insurance against any peril upon property described in this Policy, which at the time of any loss is insured as defined by the Specific Insurance Clause, until the liability of such specific insurance has been exhausted, and then shall cover only such loss as may exceed the amount due from such specific insurance (whether collectible or not) after application of any contribution, Coinsurance, average or distribution or other clauses contained in policies of such specific insurance affecting the amount collectible thereunder, not, however, exceeding the limits set forth elsewhere in this Policy.

k.    Pro-Rata Liability Clause:

The liability under this Policy shall not exceed a greater proportion of any loss than the insurance hereunder bears to all insurance, whether collectible or not, covering in any manner the loss insured against by this Policy.

l.    Brands and Labels:

If branded or labeled merchandise covered by this Policy is damaged and the Company elects to take all or any part of such merchandise at the value established by the provisions of this Policy, the Insured may, at his own expense, stamp "salvage" on the merchandise or its containers or may remove or obliterate the brands or labels, if such stamps, removal or obliteration will not physically damage the merchandise.

m.    Loss Clause

It is a condition of this Policy that in case of loss occurring hereunder, the amount of such loss shall be automatically reinstated after its occurrence without payment of additional premium for such reinstatement with the exception of loss caused by perils which are subject to annual aggregate sublimits as noted on the Declarations Page of this Policy.

n.    Cancellation:

This Policy may be cancelled by the Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the Insured at the address shown in this Policy or last known address written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of the cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing. However, if the Insured fails to pay premium when due, this Policy may be cancelled by the Company by giving the Insured not less than ten (10) days written notice of cancellation. If the Insured cancels, earned premiums shall be computed in accordance with the customary short-rate procedure. If the Company cancels, earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Insured.

o.    Improvements and Betterments:

This Policy shall cover loss or damage, if any, to improvements and betterments to buildings. In the event of loss or damage, this Company agrees to accept and consider the Insured, in the position of sole and unconditional owner of improvements and betterments, any contract or lease the Insured may have made to the contrary notwithstanding.

p.   Inspection of Property and Operations:

The Company shall be permitted but not obligated to inspect, at all reasonable times, any property of the Insured covered under this Policy.  Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe or healthful or in compliance with any law, rule, or regulation.

q.   Audit:

This Company, through its authorized representative, shall be privileged to inspect the books and records of the Insured pertaining to the subject matter of this insurance at all reasonable times during the term of this Policy and for twelve (12) months after the expiration or termination of this Policy.

r.   Subrogation Waiver Clause:

This insurance shall not be invalidated if the Insured in writing has waived or may hereafter, but prior to the occurrence of any loss covered hereunder, waive its right of recovery from any firm, corporation or individual, for loss or damage covered hereunder and this Company expressly waives subrogation against any subsidiary or affiliated company of the Insured.

s.   Conflict of Wording:

The conditions contained in this form shall supercede those of the basic Policy to which this form is attached wherever the same may conflict.  Where there is conflict between the specific sections and general conditions in this Policy, the conditions of the specific section shall prevail.

t.   Titles of Paragraphs:

The several titles to the various paragraphs of this form (and of endorsements and supplemental contracts, if any, as now or hereafter attached to this Policy) are inserted solely for the convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

u.   Assistance and Cooperation of the Insured:

The Insured shall cooperate with the Company and upon this Company's request shall attend hearings and trials and shall assist in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses in conduct of suits.

v.   Fire Fighting Expense Clause:

This Company shall not be liable for any cost or expense in fighting fire except as provided by the Foam Loss Assumption Clause or unless endorsed hereon.

w.   Governmental Action Clause:

This company shall be liable for acts of destruction at the order of civil authority at the time of and for the purpose of preventing the spread of fire, provided such fire did not originate from any perils herein specifically excluded.

# PROPERTY SECTION

<u>INTEREST AND PROPERTY INSURED</u>:

This Company agrees to insure (subject to all the terms, conditions, limitations and exclusions of this Policy):

Except as hereinafter excluded, and excluding all property named in the Provisional Section, if included herein, all buildings, tanks and structures of every description, and all contents therein and property of every description upon the premises as now or hereafter constituted; all whether the Insured's own or held in trust or on consignment or on commission or held in storage or for repairs or sold but not delivered or removed; all comprising a part of or appertaining to the operation of the Insured's locations and facilities per schedule attached.

Endorsement No._____1_____Additional Premium_____--_____Return Premium_____--_____

Name of Insured _____Aluminum Recovery Technology_____

## ACCOUNTS RECEIVABLE ENDORSEMENT

**COVERAGE:**

In consideration of additional premium and subject to the terms and conditions contained herein, this policy is extended to cover:

a.  All sums due to the Insured provided the Insured is unable to affect collection thereof as the direct result of loss or damage to records of accounts receivable;

b.  Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

c.  Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

d.  Other expenses, when reasonable incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

**LIMIT OF INSURANCE:**

This Company shall not be liable hereunder for an amount to exceed **$100,000**, per occurrence.

**REMOVAL:**

Such insurance as is afforded by this policy applies while the records of accounts receivable are being removed to and while at a place of safety because of imminent danger of loss or damage and while being returned from such place.

**PERILS EXCLUDED:**

This policy does not insure against:

a.  Loss due to bookkeeping, accounting or billing errors or omissions;

b.  Loss, the proof of which as to factual existence, is dependent upon an audit of records or an inventory computation, but this shall not preclude the use of such procedure in support of claim for loss which the Insured can prove, through evidence wholly apart therefrom, as due solely to a risk of loss to records of accounts receivable not otherwise excluded hereunder.

c.  Loss due to alteration, falsification, manipulation, concealment, destruction or disposal of records of accounts receivable committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities, or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

**CONDITIONS:**

a.  Recoveries:

After payment of loss, all amount recovered by the Insured on accounts receivable for which the Insured has been indemnified shall belong and be paid to the Company by the Insured up to the total amount of loss paid by the Company; but all recoveries in excess of such amount shall belong to the Insured.

b.  Insured's Duties Upon Occurrence of Loss:

1.  Upon knowledge of the occurrence of any loss which may result in a claim hereunder, the Insured shall:

   (a)  Give notice thereof as soon as practicable to the Company or any of its authorized agents and, if the loss is due to a violation of law, also to the police.

   (b)  File detailed proof of loss, duly sworn to, with the Company as soon as practicable.

2.   Upon the Company's request, the Insured shall submit to examination by the Company, subscribe the same under oath if required, and produce for the Company examination all pertinent records, all at such reasonable times and places as the Company shall designate, and shall cooperate with the Company in all matters pertaining to loss or claims with respect thereto, including rendering all possible assistance to effect collection of outstanding accounts receivable.

c.   Determination of Receivables; Deductions:

1.   When there is proof that a loss covered by this Policy has occurred but the Insured cannot accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be based on the Insured's monthly statements and shall be computed as follows:

(a)   Determine the amount of all outstanding accounts receivable at the end of the same fiscal month in the year immediately preceding the year in which the loss occurs.

(b)   Calculate the percentage of increase or decrease in the average monthly total of accounts receivable for the twelve months immediately preceding the month in which the loss occurs, or such part thereof for which the Insured has furnished monthly statements to the underwriters as compared with such average for the same months for the preceding year;

(c)   The amount determined under (a) above, increased or decreased by the percentage calculated under (b) above, shall be the agreed total amount of accounts receivable as of the last day of the fiscal month in which said loss occurs.

(d)   The amount determined under (c) above shall be increased or decreased in conformity with the normal fluctuations in the amount of accounts receivable during the fiscal months involved, due consideration being given to the experience of the business since the last day of the last fiscal month for which statement has been rendered.

2.   There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by receivables in loss or damage or otherwise established or collected by the Insured, and an amount to allow for probable paid debts that would normally have been uncollectable by the Insured.  All unearned interest and service charges shall be deducted.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No. _____2_____ Additional Premium _____--_____ Return Premium _____--_____

Name of Insured _____Aluminum Recovery Technology_____

## ASBESTOS EXCLUSION

This Policy does not insure against:

(1)     asbestos material removal, unless the asbestos itself is damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective systems;

(2)     demolition or increased cost of reconstruction, repair, debris removal or loss of use of necessitated by the enforcement of any law or ordinance regulating asbestos material; or

(3)     any governmental direction or request declaring that asbestos material present in or part of or utilized on any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.


## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED


Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No. _____3_____ Additional Premium_____--_____ Return Premium_____--_____

Name of Insured _____ Aluminum Recovery Technology _____

## AUTHORITIES ENDORSEMENT

It is hereby understood and agreed that with respect to the property section only:

Except as specifically stated in this policy or endorsement attached thereto, the company shall not be liable for loss, damage, costs, expenses, fines, or penalties incurred, sustained by or imposed on the Insured at the order of any Government Agency, Court, or other Authority arising from any cause whatsoever.

However, if any time element coverage is afforded by this policy or endorsements thereto, the coverage is extended to include any increase in the actual loss sustained by the Insured, resulting directly from an interruption of business covered hereunder, during the length of time not exceeding four (4) consecutive weeks, when as a direct result of damage to or destruction of covered property by the peril(s) insured against, access to the premises or commencement of repairs is delayed at the order of any Government Agency, Court, or other Authority.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No. _____4_____ Additional Premium _____--_____ Return Premium _____--_____

Name of Insured _____ Aluminum Recovery Technology _____

## AUTOMATIC COVERAGE ENDORSEMENT
### (Real and Personal Property)

This policy is automatically extended (subject to all provisions and stipulations contained herein) to cover any newly acquired Real and Personal Property locations not already covered under this Policy for a period of Sixty (60) days from the date the property is acquired by the Insured subject to a limit of liability of **$1,000,000** at any one location.

At the termination of such Sixty (60) day period, coverage under this newly acquired property provision shall cease and full insurable value must be reported to the Company and additional premium charged (pro-rata) on such newly acquired property, effective on the date of acquisition.

Flood and Earthquake Coverage is excluded.

No coverage is provided under this provision on property while in transit or waterborne, nor while on the premises of any exhibition, exposition, fair or trade show.  This provision shall not be construed as providing coverage at locations scheduled or otherwise insured herein.

This Newly Acquired Property provision shall not apply to provide Time Element Coverage for any unnamed location.

This Newly Acquired Property provision shall not increase any amount or limits of insurance provided by this policy.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No._____5_____ Additional Premium_____--_____ Return Premium_____--_____

Name of Insured _____ Aluminum Recovery Technology _____

## BIOLOGICAL OR NUCLEAR EXCLUSION ENDORSEMENT

This policy does not insure against any loss, damage, cost or expense caused by or resulting from any of the following, regardless of any other cause or event contributing concurrently or in any sequence thereto:

1.     The unlawful possession, use, release, discharge, dispersal or disposal of any bacteriological, viral, radioactive or similar agents or matter regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

2.     The unlawful possession, use, release, discharge, detonation, dispersal or disposal of any device or material capable of producing a nuclear reaction or the spread of radioactivity, regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No. _____6_____ Additional Premium _____ -- _____ Return Premium _____ -- _____

Name of Insured _____ Aluminum Recovery Technology _____

## BOILER AND MACHINERY ENDORSEMENT

1.    **INSURING AGREEMENT**

Subject to all the provisions stated herein the Company shall be liable for:

(a)    direct physical loss to property of the Insured and to property of others in the care, custody or control of the Insured;

(b)    the loss and expense resulting from the necessary interruption of business; if a Business Interruption Section is attached and which provisions hereby apply;

(c)    extra expense; if a Business Interruption Section is attached and which provisions hereby apply and

all as resulting from an Accident to an Object.

When used in this Endorsement, the following definitions shall apply:

**"Object"** shall mean any boiler, fired or unfired pressure vessel, refrigerating or air conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

**"Accident"** shall mean a sudden and accidental breakdown of an Object or a part thereof which manifests itself at the time of its occurrence by physical damage that necessitates repair or replacement of the Object or part thereof.

2.    **LIMIT OF LIABILITY**

Liability under this Endorsement arising out of any One Accident is limited to $Included.

If an initial Accident causes other Accidents, all will be considered "One Accident". All Accidents at any one location which manifest themselves at the same time and are the result of the same cause will be considered "One Accident."

3.    **DEDUCTIBLES**

*As respects Time Element, with respect to all claims for loss, damage, or expense arising out of any one occurrence, from the total amount of any loss, damage or expense for which the Company would be liable under Business Interruption Section, there shall first be deducted the amount obtained by multiplying "The 100% Plant Business Interruption Daily Value" declared by the Insured at the time of loss by the factor of 10 and the insurance under said item shall not apply to any part of such amount deducted.

"The 100% Plant Business Interruption Daily Value" declared by the Insured at the time of such loss, damage or expense as described above shall mean the actual amount of Gross Earnings, less charges and expenses which do not necessarily continue during the interruption of business, that would have been earned by the entire location or facility had no loss or damage occurred, divided by the actual number of working days, had no loss occurred during the period of interruption of the business with due consideration being given to the experience of the business before the date of loss or damage and the probable experience thereafter had no loss occurred.

4. **CONDITIONS**

With respect to Objects insured by the provision of this Endorsement, the following conditions shall apply:

a. **Inspection**

The Company shall be permitted but not obligated to inspect, at all reasonable times, any Object. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that the Object is safe or healthful.

b. **Suspension**

Upon the discovery of a dangerous condition with respect to any Object, any representative of the Company may immediately suspend the insurance with respect to an Accident to said Object by written notice mailed or delivered to the Insured at the address of the Insured, or at the Location of the Object. Insurance so suspended may be reinstated by the Company, but only by an Endorsement issued to form a part of this policy. The Insured will be allowed the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension.

5. **SUBLIMITS OF COVERAGE**

a. **Expediting Expenses Coverage**

This policy is extended to cover the reasonable extra cost to make temporary repair, expedite permanent repairs and expedite permanent replacement of property covered by this Endorsement, including overtime and the extra cost of express or other rapid means of transportation when loss to such property results from damage as insured against by this Endorsement, all subject to a limit of $50,000. This limit is part of and not in addition to the Limit of Liability.

b. **Hazardous Substances Coverage**

It is agreed that, if, as a result of an Accident, any property is damaged, contaminated, or polluted by a substance declared by a governmental agency to be hazardous to health, the Company shall be liable under the policy for the additional expenses incurred for cleanup, repair or replacement, or disposal of that damaged, contaminated or polluted property. The Company's total liability for additional expenses shall not exceed $50,000. This limit is part of and not in addition to the Limit of Liability.

As used here, "additional expenses" shall mean expenses incurred beyond those for which the Company would have been liable if no substance hazardous to health had been involved in the Accident.

c. **Ammonia Contamination Coverage**

The Company's liability for loss, including salvage expense, with respect to damage by ammonia contacting or permeating property under refrigeration or in process requiring refrigeration, resulting from any One Accident to one or more Objects shall not exceed $25,000. This limit is part of and not in addition to the Limit of Liability.

d. **Water Damage Coverage**

The Company's liability for loss, including salvage expense, on property damaged by water, resulting from any One Accident shall not exceed $50,000. This limit is part of and not in addition to the Limit of Liability.

e.   **Consequential Damage**

This policy is extended to cover loss to property of the Insured and loss to property of others for which the Insured shall become legally obligated to pay when such loss is due to spoilage from lack of power, light, heat, steam, or refrigeration resulting solely from an Accident to an Object, subject to a limit of $25,000. This limit is part of and not in addition to the Limit of Liability.

f.   **Off Premises Service Interruption**

This policy is extended to cover the necessary interruption of business conducted by the Insured which results from service interruption caused as a result of an Accident to an Object, as defined above, whether or not such Object is located on the premises of the Insured, which is:

a.   owned by the public utility company or other company contracted by the Insured to supply steam, gas, water, electricity or refrigeration to the Insured, and

b.   used to supply said services directly to the Insured,

provided the duration of such interruption is in excess of forty-eight (48) hours. However, as respects such Object, the Company shall not be liable under this endorsement for payment of any loss resulting from or arising out of an Accident caused by flood, earthquake, fire, lightning, sprinkler leakage, windstorm, hail, aircraft, vehicles, smoke, explosion, civil authority, riot, civil commotion, vandalism or molten material.

This Company's liability for loss from Off Premises Service Interruption from any One Accident shall not exceed NO COVERAGE. This limit is part of and not in addition to the Limit of Liability.

6.   **EXCLUSIONS**

A.   The following losses are not insured under this Endorsement:

1)   Breakdown of any structure or foundation (other than a bedplate of a machine) supporting an Object or any part thereof, not caused by an Accident to the Object;

2)   Breakdown of any boiler setting, insulating or refractory material not caused by an Accident to the Object;

3)   Breakdown of well casings, penstocks or draft tubes;

4)   Breakdown of any elevator, crane, hoist, power shovel, dragline, or conveyor, but not excluding any pressure vessel or electrical equipment used with such a machine;

5)   Breakdown of Objects manufactured or held by the Insured for sale to others;

6)   Breakdown of catalyst not caused by an Accident to the Object containing such catalyst or any other insured Objects;

7)   Breakdown of any oven, stove or furnace;

8)   Breakdown of any sewer piping, any underground gas piping, any piping forming a part of a sprinkler system or any water piping other than:

(a)   feed water piping between any boiler and its feed pumps or injectors,

(b)   boiler condensate return piping, or

(c)   water piping forming a part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes;

9)   Breakdown of an Object until such time as said Object has been installed and completely tested on the premises of the Insured. For the purposes of this insurance, "completely tested" shall mean that said Object has operated on the Insured's premises in the capacity

for which it was designed as part of the Insured's normal production process or processes. Notwithstanding the above coverage under this Agreement shall apply to any newly installed Object having a fair market value of $1,000,000. or less and to any spare or replacement Object or having parts thereof;

10) An Accident to any Object while it is being maintained or altered if said Accident is a direct result of said maintenance or alterations. However, if an Accident otherwise insured hereunder subsequently ensues, then the Company shall be liable for such Accident. Any opening, closing or transporting of an Object shall not be considered a part of any maintenance or alterations;

11) An Accident to any Object utilizing sulfur dioxide or hydrogen sulfide gas as respects:

    (a) loss or damage resulting from corrosion anywhere following said Accident,

    (b) loss or damage to catalyst caused by steam or water contacting or permeating the said catalyst following said Accident, and

    (c) payment under any Business Interruption or Extra Expense Endorsement forming a part of this policy, for any time during which the resumption of business is in anyway curtailed, delayed or prevented because of loss or damage of the kinds referred to in the preceding Sections (a) and (b);

12) Breakdown of any vacuum tube or gas tube; and

13) Breakdown of any electronic computer or electronic data processing equipment, unless used to operate one or more insured "objects".

14) Any increase in loss caused by or resulting from the enforcement of any ordinance, law, regulation, rule or ruling regulating or restricting repair, replacement, alteration, use, operation, construction or installation. As used here, increase in loss also includes expenses incurred beyond those for which we would have paid if no substance declared to be hazardous to health by a governmental agency had been involved in the "accident".

15) Loss caused by or resulting from:

    a. War, including undeclared or civil war;

    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

B. As respects this Endorsement, Accident shall not include loss:

1) From depletion, deterioration, corrosion or erosion, wear and tear, leakage at any valve, fitting, shaft seal, gland packing, joint or connection; the functioning of any safety or protective device; nor shall Accident mean the breakdown of any Object while it is undergoing hydrostatic, pneumatic, gas pressure, or insulation breakdown tests, or is being dried out;

2) From fire concomitant with or following an Accident or from the use of water or other means to extinguish fire (as respects any electrical machine or apparatus or gas turbine), this section is changed to read: "from fire outside said electrical machine or apparatus or gas turbine concomitant with or following an Accident or from the use of water or other means to extinguish fire";

3) From an Accident caused directly or indirectly by fire or from the use of water or other means to extinguish fire;

4) From a combustion explosion outside the Object concomitant with or following an Accident;

5)    From an Accident caused directly or indirectly by a combustion explosion outside the Object;

6)    As a respects any boiler of the chemical recovery type, from an explosion within the furnace of any such boiler or within the passages from the furnace to the atmosphere whether or not such explosion (a) is contributed to or aggravated by an Accident to any part of said boiler that contains steam or water, or (b) is caused in whole or in part, directly or indirectly, by an Accident to any Object or part thereof;

7)    (a) From an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or

   (b) From nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident;

   nor shall the Company be liable for any loss covered in whole or in part by a contract of insurance, carried by the Insured, which also covers any hazard or peril of nuclear reaction or nuclear radiation.

C.    Notwithstanding any provisions in the policy or its other Endorsements to the contrary, the Company assumes no liability under this Endorsement for any loss:

1)    From an Accident caused directly or indirectly by earth movement, including but not limited to earthquake, landslide, mudslide, subsidence or volcanic eruption; or

2)    From the explosion of accumulated gases or unconsumed fuel within the fire box, combustion chamber, any fired vessel or within the flues which conduct the gases of combustion therefrom;

3)    From flood, unless an Accident ensues and the Company shall then be liable under this Endorsement only for loss from such ensuing Accident; and

4)    From explosion of an Object other than:

   (a)    any steam boiler, steam piping, steam turbine, gas turbine, steam engine, or

   (b)    any machine or electrical apparatus when such loss is caused by centrifugal force or mechanical breakdown.

D.    With respect to an Accident to an Object, liability for loss to any catalyst shall not exceed the Actual Cash Value thereof at the time of said loss.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No._____7_____Additional Premium_____--_____Return Premium_____--____

Name of Insured _____Aluminum Recovery Technology_____

## BRIDGE WORDING ENDORSEMENT

Whenever used in this Policy, the terms, "we", "our", "you", and "your" are hereby changed to "the Company", "the Company's", "the Insured", and "the Insureds".

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No. _____8_____ Additional Premium _____--_____ Return Premium _____--_____

Name of Insured _____Aluminum Recovery Technology_____

## COMBINED BUSINESS INTERRUPTION AND
## EXTRA EXPENSE INSURANCE ENDORSEMENT

**A.** **AMOUNT OF INSURANCE:** See Schedule of Locations and Specific Amounts of Insurance Endorsement

    1.    Against loss directly resulting from necessary interruption of the Insured's business and the consequent reduction in *Gross Earnings*, caused by damage to or destruction of real or personal property covered under this Policy, except finished stock, by the peril(s) insured against during the term of this Policy;

    2.    Against loss directly resulting from necessary *Extra Expense*, as hereinafter defined, incurred by the Insured in order to continue as nearly as practicable the normal operation and normal Gross Earnings of the Insured's business following damage to or destruction of real or personal property covered under this Policy by the peril(s) insured against during the term of this Policy;

        all while at the locations described in the Schedule Locations and Specific Amounts Endorsements.

**B.** **COVERAGE:**

    Subject to all terms, conditions and stipulations of the Policy to which this endorsement is attached, not in conflict herewith, this Policy is extended to insure against loss resulting directly from:

    1.    Necessary interruption of the Insured's business and the consequent reduction in *Gross Earnings*, caused by damage to or destruction of real or personal property, except finished stock;

    2.    Necessary *Extra Expense*, as hereinafter defined, incurred by the Insured in order to continue as nearly as practicable the normal operation and normal *Gross Earnings* of the Insured's business following damage to or destruction of real or personal property;

    by the peril(s) insured against during the term of this Policy, which property is on premises occupied by the Insured and situated as herein described.

**C.** **MEASURE OF RECOVERY:**

    In the event of such damage or destruction, this Company shall be liable for:

    A.    The ACTUAL LOSS SUSTAINED by the Insured resulting directly from such interruption of business, but not exceeding the reduction in *Gross Earnings* less charges and expenses which do not necessarily continue during the interruption of business (*hereinafter referred to as* "**Loss of Earnings**");

    B.    Such NECESSARY EXTRA EXPENSE incurred by the Insured;

    for only such length of time (*hereinafter referred to as the* "**Period of Restoration**") as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of termination of this Policy.

Applicable only to *Loss of Earnings*, due consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the Insured's business with the same quality of service which existed immediately preceding the date of damage or destruction.

No claim shall be sustained with respect to *Business Interruption* and/or *Extra Expense* unless and until a loss has been paid or liability admitted, in respect of direct physical damage to property insured under this Policy giving rise to such *Business Interruption* and/or *Extra Expense* loss. This condition shall not apply if no such payment shall have been made nor liability admitted solely owing to the operation of a "**Deductible**" in this Policy excluding liability for losses below a specified amount.

**D.**     **COINSURANCE:**

This Company shall be liable, in the event of loss, for no greater proportion thereof than the amount hereby covered bears to <u>**ninety percent (90%)**</u> of the *Gross Earnings* that would have been earned (*had no loss occurred*) during the <u>Twelve</u> (12) months immediately following the date of damage to or destruction of the described property.

**E.**     **RESUMPTION OF OPERATIONS:**

It is a condition of this insurance that:

1.     Applicable only to *Loss of Earnings*, if the Insured could reduce the loss,

    a.     By complete or partial resumption of operation of the property herein described, whether damaged or not, or

    b.     By making use of merchandise or other property at the location(s) described herein or elsewhere, or

    c.     By making use of stock (raw, in process, or finished) at the location(s) described herein or elsewhere,

such reduction shall be taken into account in arriving at the amount of loss hereunder.

2     Applicable only to *Extra Expense*, as soon as practicable the Insured shall resume normal operations of the business and shall dispense with such *Extra Expense*.

**F.**     **GROSS EARNINGS:**

For the purpose of this insurance, "**Gross Earnings**" are defined as the sum of:

1.     Total net sales value of production,

2.     Total net sales of merchandise, and

3.     Other earnings derived from operation of the business,

less the cost of:

4.     Raw stock from which such production is derived,

5.  Supplies consisting of materials consumed directly in the conversion of such raw stock into finished stock or in supplying the service(s) sold by the Insured,

6.  Merchandise sold, including packaging materials therefor, and

7.  Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining *Gross Earnings*. In determining *Gross Earnings* due consideration shall be given to the experience of the business before the date of damage or destruction and the probable experience thereafter had no loss occurred.

G.  **EXTRA EXPENSE:**

The term **"Extra Expense"**, wherever used in this form, is defined as the excess (if any) of the cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the cost(s) that would normally have been incurred to conduct the business during the same period had no damage or destruction occurred. Any salvage value of property obtained for temporary use during the period of restoration, which remains after the resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder.

H.  **LIMIT OF LIABILITY:**

1.  **LIMIT OF LIABILITY APPLICABLE ONLY TO EXTRA EXPENSE:**

The Company's liability for loss resulting directly from *Extra Expense* shall not exceed the percentage specified below of the amount of insurance specified in this endorsement for the determined period of restoration:

4%      when the period of restoration is not in excess of one month;

-8%     when the period of restoration is in excess of one month, but not in excess of two months; or

-10%    when the period of restoration is in excess of two months.

2.  **LIMIT OF LIABILITY APPLYING TO LOSS OF EARNINGS AND EXTRA EXPENSE:**

The Company's liability for both *Loss of Earnings* and *Extra Expense* shall not exceed the amount of insurance specified in this endorsement.

I.  **INTERRUPTION BY CIVIL AUTHORITY:**

This Policy is extended to include:

1.  The actual loss sustained by the Insured, resulting directly from *Loss of Earnings* as covered hereunder;

2.  Necessary *Extra Expense* incurred by the Insured as covered hereunder;

during the length of time, not exceeding <u>Two</u> (2) consecutive weeks, when, as a direct result of damage to or destruction of property adjacent to the premises herein described by the perils(s) insured against, access to such described premises is specifically prohibited by order of civil authority.

**J.   EXPENSES RELATED TO REDUCING LOSS:**

Applicable only to *Loss of Earnings*, this Policy also covers such expenses as are necessarily incurred for the purpose of reducing loss under this Policy (except expense incurred to extinguish a fire) but in no event shall the aggregate of such expenses exceed the amount by which the *Loss of Earnings* otherwise payable under this Policy is thereby reduced.   Such expenses shall not be subject to the application of the Coinsurance Clause.   (Expense incurred which is in excess of the foregoing limit and which is *Extra Expense* is covered subject to the limit of liability specified elsewhere, and to all other provisions applying to the *Extra Expense* insurance provided hereunder.)

**K.   LIMITATION- MEDIA FOR ELECTRONIC DATA PROCESSING:**

Applicable only to *Loss of Earnings* resulting from damage to or destruction of media for, or programming records pertaining to, electronic data processing or electronically controlled equipment, including data thereon, by the peril(s) insured against, the length of time for which this Company shall be liable hereunder shall not exceed:

1.   Thirty (30) consecutive calendar days; or

2.   The length of time that would be required to rebuild, repair or replace such other property herein described as has been damaged or destroyed;

whichever is the greater length of time.

**L.   EXCLUSIONS - LOSS OF EARNINGS:**

Applicable only to *Loss of Earnings*, this Company shall not be liable for any:

1.   Increase of loss resulting from the suspension, lapse or cancellation of any lease, license, contract or order unless such suspension, lapse or cancellation results directly from the interruption of business, and then this Company shall be liable for only such loss as affects the Insured's earnings during, and limited to, the period of indemnity covered under this Policy.

2.   Loss resulting from damage to or destruction of finished stock nor for the time required to reproduce said finished stock; however, this Policy covers such expenses, in excess of normal, as would necessarily be incurred in replacing any finished stock used by the Insured to reduce *Loss of Earnings* under this Policy.

**M.   EXCLUSIONS - EXTRA EXPENSE:**

Applicable only to any *Extra Expense*, this Company shall not be liable for:

1.   The cost of repairing or replacing any of the real or personal property herein described, nor for the cost of research or other expense necessary to replace or restore damaged or destroyed books of account, abstracts, drawings, card index system or other records, including media for, or programming records pertaining to, electronic data processing or electronically controlled equipment, including data thereon, that have been damaged or destroyed by the peril(s) insured against, except cost in excess of the normal cost of such repair, replacement or restoration necessarily incurred for the purpose of reducing loss under this Policy.   In no event shall such excess cost exceed the amount by which the total *Extra Expense* loss otherwise payable under this Policy is thereby reduced.

2.    Any loss resulting from the suspension, lapse or cancellation of any lease or license, contract or order beyond the period of restoration.

N.    **SPECIAL EXCLUSIONS:**

This Company shall not be liable for any increase of loss resulting from:

1.    Enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings or structures; or

2.    Interference at the described premises, by strikers or other persons, with rebuilding, repairing or replacing the property or with the resumption or continuation of business;

nor shall this Company be liable for any other consequential or remote loss.

O.    **BUSINESS INTERRUPTION POLLUTION CONDITIONS:**

Liability under this Policy for any increase in Business Interruption loss occasioned directly or indirectly from the enforcement of any law, regulation or rule that governs the prevention, control, repair, cleanup or restoration of physical damage on Described Premises which results from the release, discharge or dispersal of Pollutants as insured against by this Policy shall not exceed an annual aggregate limit of $50,000 Combined for Property Damage and Business Interruption.

P.    **DEFINITIONS:**

The following terms wherever used in this Policy shall mean:

1.    **"Raw Stock"**: material in the state in which the Insured receives it for conversion by the Insured into finished stock.

2.    **"Stock in Process"**: raw stock which has undergone any aging, seasoning, mechanical or other process of manufacture at the location(s) herein described but which has not become finished stock.

3.    **"Finished Stock"**: stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

4.    **"Merchandise"**: goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

5.    **"Normal"**: the condition that would have existed had no loss occurred.

6.    **"Month"**: Thirty (30) consecutive calendar days.

Q.    The above limit is a part of and not in addition to any other Policy limit.

**THIS ENDORSEMENT REPLACES THE BUSINESS INTERRUPTION AND EXTRA EXPENSE ENDORSEMENTS CURRENTLY ATTACHED TO THIS POLICY.**

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No.\_\_\_\_\_9\_\_\_\_\_Additional Premium_____--_____Return Premium_____--\_\_\_\_\_

Name of Insured _____Aluminum Recovery Technology_____

## COURSE OF CONSTRUCTION ENDORSEMENT

**ALTERATIONS AND NEW CONSTRUCTION:**

Permission is granted to make alterations in or to construct additions to any facility and to construct new facilities at the location described under the property section and this INSURING AGREEMENT is extended to cover, subject otherwise to all its provisions and stipulations, loss resulting from damage to or destruction of such alterations, additions and new facilities (including building materials, supplies, machinery or equipment incident to such construction or occupancy while on the described locations or within one thousand (1,000) feet thereof), while in the course of construction and when completed and/or occupied. This coverage is subject to a limit of liability of **$50,000.**

**SPECIAL EXCLUSIONS:**

This Endorsement does not insure:

(1)   Contractor's or subcontractor's equipment; machinery, tools, equipment and property of a similar nature not destined to become a permanent part of the completed project or structure;

(2)   Loss of use, interruption of business, delay, loss of markets, penalties for no completion, noncompliance with contract conditions, consequential loss of any kind;

(3)   Loss caused by frost, falling of ice or freezing, unless resulting from damage caused by fire, lighting, explosion, windstorm, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke;

(4)   Loss or damage covered under any guarantee or warranty (expressed or implied) by any contractor, manufacturer or supplier whether or not such contractor, manufacturer or supplier is an insured under this policy;

(5)   Loss or damage directly or indirectly caused by fault, defect error or omission in design, plan or specification;

(6)   Loss or damage occasioned directly or indirectly by any ordinance of law, any order of governmental or municipal authority; by suspension, lapse termination or cancellation of any license, lease or permit, and any injunction or process of any court.

**SUBROGATION:**

(A)  In the event of any payment made hereunder, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

(B)  Unless otherwise endorsed, it is a condition of this insurance that the Company shall be subrogated, to the extent of payment, to all the Insured's rights of recovery against any subcontractor, architect, or design engineer, whether a named Insured or not, for any loss or damage for which the aforesaid subcontractor, architect, or design engineer would otherwise be legally liable.

**OTHER INSURANCE:**

This Endorsement shall not cover to the extent of any other insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property against the same perils; and this Company shall be liable for loss or damage only for the excess value beyond the amount due from such other insurance.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No._____10_____Additional Premium_____--_____Return Premium_____--____

Name of Insured _____Aluminum Recovery Technology_____

## DATA DISTORTION/CORRUPTION ENDORSEMENT (Combined)

It is noted and agreed this policy is hereby amended as follows:

The Insurer will not pay for damage or consequential loss directly or indirectly caused by, consisting of, or arising from:

    (A)    any functioning or malfunctioning of the Internet or similar facility, or of any intranet or private network or similar facility;

    (B)    any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set;

    (C)    loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing inability or failure of the Insured to conduct business.

This endorsement shall not exclude subsequent damage or consequential loss, not otherwise excluded, which itself results from a Defined Peril not otherwise excluded.  Defined Peril shall mean: Fire, Lightning, Earthquake, Explosion, Falling Aircraft, Flood, Smoke, Vehicle Impact, Windstorm or Tempest, Accidental Breakdown of an Object including Mechanical and Electrical Breakdown.

This Endorsement shall not act to increase or broaden coverage afforded by this policy.

Such Damage or Consequential Loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

In consequence of all the foregoing the Annual Premium remains unaltered.

All other terms, conditions and exclusions of this policy remain unchanged.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No. _____11_____ Additional Premium _____ -- _____ Return Premium _____ -- _____
Name of Insured _____ Aluminum Recovery Technology _____

## ELECTRONIC DATA PROCESSING ENDORSEMENT

A. It is understood and agreed that this policy is hereby extended to cover ELECTRONIC DATA PROCESSING EQUIPMENT and MEDIA, in an amount not to exceed $50,000 combined, as follows:

1. Data Processing Systems, including equipment and component parts thereof, owned by the Insured or leased, rented or under the control of the Insured.

2. Data Processing Media, meaning all forms of converted data and/or program and/or instruction vehicles employed in the Insured's data processing operations, and blank magnetic recording or storage media for electronic data processing, being property of the Insured or property of others for which the Insured may be liable.

B. VALUATION:

In the event of loss or damage, the basis of adjustment of the property insured shall be as follows:

1. Data Processing System - on equipment ("hardware") for electronic data processing, the actual retail replacement cost of the property at the time any loss or damage occurs. Loss or damage shall be ascertained or estimated on the basis of the actual cash retail replacement cost of property similar in kind to that insured at the place of and immediately preceding the time of such loss or damage.

2. Data Processing Media - on film, tape, disc, drum, cell and other magnetic recording or storage media ("software") for electronic data processing, the actual reproduction cost of the property; if not replaced or reproduced, blank value of such property. Actual reproduction cost shall mean the cost of reproducing the data thereon from duplicates or from originals of the previous generation, but no liability is assumed hereunder for the cost of gathering or assembling information or data for such reproduction.

C. THIS POLICY IS EXTENDED TO COVER:

1. Direct loss or damage to covered equipment and media caused by mechanical breakdown or malfunction of data processing equipment.

2. Direct loss or damage to covered equipment (including wiring) and covered media caused by short circuit, blowout, electrical or magnetic injury or disturbance, or other electrical damage.

3. Direct loss or damage to covered equipment or media from corrosion, rust or changes in humidity or temperature as a result of an insured peril loss to dedicated environmental control equipment.

D. ADDITIONAL COVERAGE:

The cost to refill halon or carbon dioxide discharge systems which protect data processing operations when they discharge as intended to control a loss covered by the agreement. The insured agrees to keep the halon or carbon dioxide systems in good working order while this agreement is in effect. This extension does not cover any loss that happens at the time of installation, repair or recharging of the halon or carbon dioxide system.

E. The above limit is a part of and not in addition to any other Policy limit.


Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No._____12_____ Additional Premium_____--_____ Return Premium_____--_____

Name of Insured _____Aluminum Recovery Technology_____

## ELECTORNIC DATE RECOGNITION CLAUSE

The policy is hereby amended as follows:

A.   We will not pay for Damage or Consequential Loss directly or indirectly caused by, consisting of, or arising from, the failure of any computer, data processing equipment or media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the insured or not, and whether occurring before, during, or after the year 2000, that results from the inability to:

    1.   correctly recognize any date as its true calendar date;

    2.   capture, save, or retain and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date otherwise than as its true calendar date; and/or

    3.   capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

B.   It is further understood that we will not pay for the repair or modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

C.   It is further understood that we will not pay for Damage or Consequential Loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design evaluation, inspection installation, maintenance, repair or supervision done by you or for you or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in A. above.

Such damage or Consequential Loss described in A., B., or C. above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This endorsement shall not exclude subsequent Damage or Consequential Loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean:  fire, lightning, explosion aircraft or vehicle impact, falling objects, windstorm, hail, tornado, hurricane, cyclone, riot, strike, civil commotion, vandalism, malicious mischief, earthquake, volcano, tsunami, freeze or weight of snow.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No._____13_____Additional Premium_____--_____Return Premium_____--_____

Name of Insured _____Aluminum Recovery Technology_____

## EXHIBITION, EXPOSITION, FAIR OR TRADE SHOW ENDORSEMENT

A.  Subject to all terms, conditions and stipulations of the Policy to which this endorsement is attached, not in conflict herewith, this Policy is extended to cover personal property of the Insured situate on the premises of any exhibition, exposition, fair or trade show within the states of the United States of America, the District of Columbia or Canada, subject to a limit of liability of **$5,000** for loss or damage arising out of any one Occurrence.

B.  This endorsement does not increase any amounts or limits of insurance provided by this Policy.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No. ___14___ Additional Premium _____--_____ Return Premium _____--_____

Name of Insured _____ Aluminum Recovery Technology _____

## FINE ARTS ENDORSEMENT

**A.  INTEREST AND PROPERTY INSURED:**

Subject to all terms, conditions and stipulations of the Policy to which this endorsement is attached, not in conflict herewith, the named Insured may apply an amount not to exceed **$5,000** in any one occurrence to cover direct loss or damage by the peril(s) insured against during the term of this Policy to Fine Arts; all while at the locations described in Form of the Policy.

**B.  NEWLY ACQUIRED PROPERTY:**

This Policy is extended to cover Fine Arts newly acquired by the Insured during the term of this Policy while such property is in the actual possession of the Insured and only while located within the United States.

Coverage under this newly acquired property provision shall commence when the Insured first acquires actual possession of such Fine Arts and shall cease Sixty (60) days from the date of such acquisition, or when reported to and accepted by the Company, or on the expiration date of this Policy, whichever shall occur first.

Liability for loss under this newly acquired property provision for any one Fine Arts property shall not exceed **$5,000** per each Fine Arts property.

This newly acquired property provision shall not increase any amounts or limits of insurance provided by this Policy.

**C.  ADDITIONAL EXCLUSIONS:**

THIS ENDORSEMENT DOES NOT INSURE:

1.  Fine Arts property while in transit or while on the premises of any exhibition, exposition, fair or trade show;

2.  Against loss or damage caused by any repairing, restoration, or retouching process performed on any Fine Arts;

3.  Against loss or damage caused by breakage of statuary, art glass windows, glassware, bric-a-brac, marble, porcelain and similar fragile property unless such breakage is caused by fire, lightning, windstorm, hail, removal, leakage from fire protective equipment, explosion, aircraft, vehicles, smoke, sonic shock wave, riot, civil commotion or vandalism.

**D.  PACKING AND UNPACKING:**

The Insured agrees that when packing or unpacking of Fine Arts is undertaken, such packing and unpacking will be performed by competent packers.

**E.  PAIR OR SETS:**

In case of loss to any part of a pair or set, the Company at their option will either:

1.  Repair or replace any part to restore the pair or set to its value before the loss; or

2.  Pay the difference between the value of the pair or set before and after the loss.

**F.     VALUATION:**

The value of all Fine Arts, including newly acquired property, will be the least of the following:

1.     Original cost, appraised or current market value, whichever is greater;

2.     The applicable limit stated in this endorsement.

In the event of loss or damage, the value of Fine Arts will be determined at the time of loss.

**G.**     The above limit is a part of and not in addition to any other Policy limit.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No._____15_____ Additional Premium_____--_____ Return Premium_____--__

Name of Insured _____Aluminum Recovery Technology_____

## FIRE FIGHTING EXTINGUISHING EXPENSE ENDORSEMENT

Coverage is extended to apply to necessary fire extinguishing materials lost, expended, damaged, or destroyed together with other costs incurred in fighting fire in, on, or exposing property insured hereunder while located on the premises described, subject to a per occurrence sublimit of $10,000.

This insurance does not cover the insured's liability by contract or otherwise, to indemnify either a city municipality or fire protection district, or any other person, firm, or corporation against loss, claim, or liability arising by reason of the movement or functioning of fire apparatus or members of fire department, or by reason of any accident arising out of the performance of services to the insured by any fire department.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No._____16_____ Additional Premium_____--_____ Return Premium_____--_____
Name of Insured _____Aluminum Recovery Technology_____

## INCREASED COST OF CONSTRUCTION & DEMOLITION ENDORSEMENT

It is hereby understood and agreed that with respect to the property section only:

**A.   THIS POLICY IS EXTENDED TO COVER:**

1.   The increased cost of repair, rebuilding or construction of the structures(s) covered under this Policy, on the same premises, of like size and occupancy, caused by loss from any peril insured against under this Policy and resulting from the enforcement of and limited to the minimum requirements of any federal, state, or municipal law or ordinance regulating the construction or repair of damaged structure(s); and

2.   The insured value of the undamaged portion, and the cost of demolishing any such undamaged portion of the structure(s) covered under this Policy, including the cost of clearing the site thereof, caused by loss form any peril insured against under this Policy and resulting from enforcement of any federal, state, or municipal law or ordinance regulating the construction or repair of buildings and in force at the time of loss which necessitate such demolition; subject to a limit of liability of $500,000 combined for any one occurrence.

**B.   THIS COMPANY SHALL NOT BE LIABLE UNDER THIS ENDORSEMENT FOR:**

1.   Any additional costs, resulting from the insured's obligation to comply with regulations mandated by any federal, state, municipal, or other authority, that existed prior to the loss from peril(s) insured hereunder.

2.   Any loss unless and until the damaged or destroyed building(s) is actually rebuilt or replaced on the same premises with due diligence and dispatch, and, in no event, unless repair or replacement is completed within Two (2) years after the destruction or damage, or within such further time as the Company may allow, in writing, during the Two (2) years.

3.   More than the amount actually and necessarily expended to repair or replace as above provided, in excess of the amount recoverable under this Policy had this endorsement not been attached thereto.

4.   More than the amount insured under this endorsement in excess of the replacement cost of the building(s) without deduction for depreciation however caused.

**C.**   This endorsement does not increase any amounts or limits of insurance provided by this Policy.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No. _____17_____ Additional Premium_____--_____ Return Premium_____--_____

Name of Insured _____Aluminum Recovery Technology_____

## INGRESS/EGRESS ENDORSEMENT

It is hereby understood and agreed that with respect to the property section only:

In consideration of increased premium and subject to all terms, conditions and stipulations of the policy to which this endorsement is attached, not in conflict herewith, this policy is extended to cover the actual loss sustained during the period of time when, in connection with or following a cause of loss insured against, ingress to or egress from real or personal property which is impaired for a period not to exceed two (2) consecutive weeks.

This endorsement does not increase any amounts or limits of insurance provided by this policy.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No._____18_____ Additional Premium_____--_____ Return Premium_____--_____

Name of Insured _____Aluminum Recovery Technology_____

## LEASEHOLD INTEREST ENDORSEMENT

A. In consideration of increased premium and subject to all terms, conditions and stipulations of the policy to which this endorsement is attached, not in conflict herewith, this policy is extended to cover, subject to the following terms and conditions, and if caused by physical loss or damage of the type insured against by this policy to real property of the type covered by this policy located on Described Premises:

 1. the actual rent which remains payable for the unexpired term of the lease if such property becomes wholly untenantable or unusable and the lease agreement requires continuation of the rent payment; or

 2. the proportion of rent which remains payable for the unexpired term of the lease if such property becomes partially untenantable or unusable and the lease agreement requires continuation of the rent payment; or

 3. the Leasehold Interest for the first three (3) months following loss or damage and the Net Leasehold Interest for the remaining unexpired term of the lease if the lease is canceled by the lessor pursuant to the lease agreement or by the operation of law.

B. **EXCLUSIONS** - This endorsement does not insure against any loss or expense resulting from:

 1. the suspension, lapse or cancellation of any license; or

 2. the Insured exercising an option to cancel the lease; or

 3. any act or omission of or by the Insured which constitutes a default under the lease.

C. **ADDITIONAL CONDITION** - It is a condition of this endorsement that the Insured shall use any suitable property or service owned or controlled by the Insured or obtainable from another source to reduce the amount of loss hereunder.

D. **DEFINITIONS** - The following terms wherever used in this endorsement shall mean:

 1. "Leasehold Interest":  The excess rent paid for either the same or similar replacement property over the amount of rent and other charges which would have been payable under the unexpired lease plus bonuses or advance rent paid (including any maintenance, operating charges or taxes) for each month during the unexpired term of the Insured's lease.

 2. "Net Leasehold Interest":  The present value of the amount which placed at eight percent (8%) annual interest would equal the Leasehold Interest (less any amounts otherwise payable hereunder).

E. **COVERED LOCATIONS AND LIMIT OF LIABILITY** - Coverage provided by this endorsement only applies to the location(s) listed on the Schedule of Locations and Specific Amounts of Insurance Endorsement, and liability for loss under this endorsement arising out of one Occurrence shall not exceed **$25,000.**

F. This endorsement does not increase any amounts or limits of insurance provided by this Policy.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No. _____19_____     Additional Premium _____----_____     Return Premium _____----_____

Name of Insured _____Aluminum Recovery Technology_____

## LENDER'S LOSS PAYABLE ENDORSEMENT

Loss, if any, under this policy shall be payable to _Fifth Third Bank_ whose address is _1000 Towne Center, Suite 1400, Southfield, MI 48075_ as lender, mortgagee, or trustee, as interest may appear.

It is understood that the lender, mortgagee or trustee now has or will acquire from time to time an insurable interest in certain property insured under this policy as established by warehouse receipts, bills of lading, documentary or other written evidence.

This insurance, solely as to the interest therein of the lender, mortgagee or trustee, shall not be impaired or invalidated by any act or neglect of the borrower, mortgagor or owner of the within described property except as provided in the last paragraph hereof, nor by any change in the title or ownership of the property, nor by the occupation of the premises wherein such property is located for purposes more hazardous than are permitted by this policy; provided that in case the borrower, mortgagor or owner shall neglect to pay any premium due under this policy the lender, mortgagee or trustee shall, on demand, pay the same.

Provided, also, that the lender, mortgagee or trustee shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said lender, mortgagee or trustee, and unless permitted by this policy, it shall be noted thereon and the lender, mortgagee or trustee shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the lender, mortgagee or trustee for ten days after notice to the lender, mortgagee or trustee of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Whenever this Company shall pay the lender, mortgagee or trustee any sum for loss or damage under this policy and shall claim that, as to the borrower, mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may, at its option, pay the lender, mortgagee or trustee, the whole principal due or to grow due on the debt with interest, and shall thereupon receive a full assignment and transfer of the debt and of the mortgage and the right of the lender, mortgagee or trustee to recover the full amount of its claim against the borrower, mortgagor or owner.

All the other terms and conditions of the policy to which this Endorsement is attached and of which it is a part, remain unchanged, which other terms and conditions include the limit(s) of liability named in the policy and the conditions of any Value Reporting, Full Reporting, Total Insurance, Coinsurance, Reduced Rate Contribution or Average Clauses incorporated therein or attached thereto.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No._____20_____ Additional Premium_____--_____ Return Premium_____--_____

Name of Insured _____ Aluminum Recovery Technology _____

## MOLD EXCLUSION ENDORSEMENT

This policy does not insure any loss, damage or expense consisting of, caused by, contributed to, or aggravated by mold, moss, mildew, fungi, spores, bacterial infestation or any similar organism, wet or dry rot and extremes of temperature or humidity, whether directly or indirectly the result of a covered peril. This includes, but is not limited to, the cost for investigation, testing, remediation services, extra expense or business interruption. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

If loss otherwise covered by this policy occurs and the cost of removal of debris is increased due to the presence of rust, mold, moss, fungus, bacterial infestation, wet or dry rot and extremes of temperature or humidity, this policy will only be liable for the costs of debris removal which would have been incurred had no such factors been present in, on, or about the covered property to be removed.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No. _____21_____ Additional Premium_____ -- _____ Return Premium_____ -- _____
Name of Insured _____ Aluminum Recovery Technology _____

## POLITICAL RISK ENDORSEMENT

It is hereby understood and agreed that the following section is added to the "Perils Excluded" section of this policy:

s. Confiscation, expropriation, nationalization, commandeering, requisition or destruction of or damage to property by order of the Government de jure or de facto or any public, municipal or local authority of the country or area in which the property is situated; seizure or destruction under quarantine or customs regulation.

This endorsement does not increase any amounts or limits of insurance provided by this policy.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No. _____22_____ Additional Premium_____ -- _____Return Premium_____ -- _____

Name of Insured _____Aluminum Recovery Technology_____

## REPLACEMENT COST ENDORSEMENT
(This endorsement does not apply to Refractory Lining or Catalyst)

A.   In consideration of the premium of the policy to which this endorsement is attached and the following Coinsurance Clause being made a part of this policy to apply to the above named coverage, which Coinsurance Clause supersedes and replaces the Coinsurance Clause otherwise applicable to such coverage, the provisions of this policy applicable only to such coverage is amended to substitute the term "replacement cost" for the term "actual cash value" wherever it appears in the policy, thereby eliminating any deduction for depreciation, subject however, in all other respects to the stipulations, limitations and conditions stated herein and in the policy to which this endorsement is attached.

B.   COINSURANCE CLAUSE:

In consideration of the rate and/or form under which this policy is written, it is expressly stipulated and made a condition of this contract that the Insured shall at all times maintain contributing insurance on each item of property, the replacement cost of which is covered by this policy, to the extent of at least **ninety percent (90%)** of the replacement cost (without deduction for depreciation) at the time of the loss, and that failing to do so, the Insured shall to the extent of such deficit bear his, her or their proportion of any loss.

In the event that the aggregate claim for any loss is less than $10,000.00 and less than 2% of the total amount of insurance upon the property described herein at the time such loss occurs, the Insured shall not be required to furnish any inventory of the undamaged property to establish the value referred to in the Coinsurance Clause provided, however, that nothing herein shall be construed to waive the application of the first paragraph of this clause.

If this policy is divided into two or more items, the foregoing conditions shall apply to each item separately.

C.   THIS COMPANY'S LIABILITY FOR LOSS UNDER THIS POLICY INCLUDING THIS ENDORSEMENT SHALL NOT EXCEED THE SMALLEST OF THE FOLLOWING AMOUNTS:

1.   The amount of this policy;

2.   The replacement cost of property or any part thereof, identical with property described herein, at the same location and intended for the same occupancy and use;

3.   The amount actually and necessarily expended in repairing or replacing the property described herein, or any part thereof, at the same location, or another location, and intended for the same occupancy and use.

D.   INSURED'S ELECTION:

The Insured may elect first to make claim under this policy in accordance with its terms and conditions, disregarding this endorsement, except that the Coinsurance Clause contained in this endorsement and constituting part of the consideration therefore applies to all claims under the above named item(s) and the Insured may make further claim for any additional liability brought about by this endorsement in accordance with its terms, conditions and limitations, provided this Company is notified in writing within 180 days after loss of the Insured's intent to make such further claim.

E.   THE COMPANY SHALL NOT BE LIABLE FOR:

1.   Any loss occasioned by the enforcement of any federal, state or municipal law or ordinance regulating the construction or repair of buildings and structures, unless such liability has been specifically assumed under this policy;

2.  Any loss under this endorsement unless and until the damaged property is actually repaired or replaced by the Insured with due diligence and dispatch, and in no event, unless repair or replacement is completed within two (2) years after the destruction or damage, or within such further time as the Company may during the two (2) years, in writing, allow.

F.  APPORTIONMENT CLAUSE:

This company shall not be liable for a greater proportion of any loss than the amount of this policy applying to the above named item(s) bears to the total insurance on such item(s), whether or not such other insurance covers in the same manner and to the same extent as this policy as extended by endorsement, and whether such other insurance is collectible or not.

G.  If this policy is divided into two or more items, the foregoing apply separately to each item to which this endorsement applies.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No. _____23_____     Additional Premium _____     Return Premium _____

Name of Insured _____Aluminum Recovery Technology_____

## STANDARD MORTGAGE ENDORSEMENT
### (This Endorsement Applies Only To Real Property)

It is hereby understood and agreed that __Fifth Third Bank, 1000 Towne Center, Suite 1400, Southfield, MI 48075__ is mortgagee (or trustee) as their interest may appear.

Loss or damage, if any, under this Policy, shall be payable to the mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this Policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this Policy, the mortgagee (or trustee) shall, on demand, pay the same.

Further, the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this Policy shall be null and void.

This Company reserves the right to cancel this Policy at any time as provided by its terms, but in such case this Policy shall continue in force for the benefit only of the mortgagee (or trustee) for Ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Whenever this Company shall pay the mortgagee (or trustee) any sum for loss or damage under this Policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Endorsement No. _____24_____   Additional Premium _____--_____   Return Premium _____--_____
Name of Insured _____Aluminum Recovery Technology_____

## TERRORISM EXCLUSION
## (FOR CERTIFIED ACTS OF TERRORISM UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED)

This Policy excludes loss, damage, cost or expense, arising directly or indirectly as a result of a "certified act of terrorism" as defined by Section 102(1) of the Terrorism Risk Insurance Act, as amended ("the Act"), and any revisions or amendments thereto, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For purposes of this endorsement and in compliance with the Act, "certified act of terrorism" shall mean an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the Act. The criteria contained in that Act for a "certified act of terrorism" include the following:

1. The act resulted in aggregate losses in excess of $5 million; and
2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

However, if an act of terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire,  this Company will pay for the loss or damage caused by that fire.  Such coverage for fire applies only to direct loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy to the lesser of the actual cash value of the property at the time of the loss, or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

With respect to fire resulting from any one or more acts of terrorism, this Company will not pay any amounts for which this Company is not responsible under the terms of the Act (including subsequent Congressional action pursuant to the Act) due to the application of Section 103 of the Act or any clause that results in a cap on our liability for payments for terrorism losses.

**THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABIRTY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, COVERAGE MAY BE REDUCED.**

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Form #71330 (1/08)

Endorsement No. _____25_____   Additional Premium _____--_____   Return Premium _____--_____

Name of Insured _____Aluminum Recovery Technology_____

## TOTAL TERRORISM EXCLUSION

This Endorsement only applies in the United States of America and its Territories and Possessions.

Notwithstanding any provision to the contrary within this Policy or any endorsement thereto, it is agreed that this Policy excludes loss, damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from, or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement, an "act of terrorism" means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost,  or expense of whatsoever nature directly or indirectly caused by, resulting from,  or in connection with any action taken in controlling, preventing, suppressing,  or in any way relating to any act of terrorism.

However, if an act of terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any  State of the United States, the District of Columbia,  the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire,  this Company will pay for the loss or damage caused by that fire.  Such coverage for fire applies only to direct loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy to the lesser of the actual cash value of the property at the time of the loss, or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

With respect to fire resulting from any one or more "certified acts of terrorism" as defined under the Federal Terrorism Risk Insurance Act, as amended ("the Act"), this Company will not pay any amounts for which this Company is not responsible under the terms of the Act (including subsequent Congressional action pursuant to the Act) due to the application of Section 103 of the Act or any clause that results in a cap on our liability for payments for terrorism losses.

**THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABIITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, COVERAGE MAY BE REDUCED.**

Nothing herein contained shall be held to vary, alter, waive, or change any of the terms, limits, or conditions of the policy, except as herein above set forth.

Form # 71331 (1/08)

TOTAL TERRORISM EXCLUSION ENDORSEMENT
1 OF 1

Endorsement No._____26_____ Additional Premium_____--_____ Return Premium_____--_____

Name of Insured _____Aluminum Recovery Technology_____

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of policy remain unchanged.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

ALL-21101 (11/06) Ptd. in U.S.A.

Endorsement No._____27_____ Additional Premium_____--_____Return Premium_____--_____

Name of Insured _____Aluminum Recovery Technology_____

## VALUABLE PAPERS AND RECORDS ENDORSEMENT

In consideration of additional premium the insurance under this endorsement shall cover valuable papers and records while located as specified herein, it being a condition precedent to any right of recovery hereunder that such valuable papers and records shall be kept in appropriately protected receptacles at all times when the premises are not open for business, except while such valuable papers and records are in actual use.

Such insurance as is afforded by this endorsement applies while the valuable papers and records are being conveyed outside the premises and while temporarily within other premises, except for storage, provided the Company's liability for loss shall not exceed **$50,000.**

Such insurance as is afforded by this endorsement applies while the valuable papers and records are being removed to and while at a place of safety because of imminent danger of loss and while being returned from such place, provided the Insured gives written notice to the Company of such removal within ten (10) days thereafter.

### EXCLUSIONS

This endorsement does not apply:

    a.    to loss due to any fraudulent, dishonest, or criminal act by any Insured, a partner therein, or an officer, director or trustee thereof, while working or otherwise and whether acting alone or in collusion with others.

    b.    to loss directly resulting from errors or omissions in processing or copying unless a covered peril ensues and then only for direct loss caused by such covered peril.

    c.    to loss of property held as samples or for sale or for delivery after sale.

    d.    to loss of property not specifically declared and described, if such property cannot be replaced with other of like kind and quality;

### DEFINITIONS

The following terms whenever used in this endorsement shall mean:

    a.    Valuable Papers and Records: Written, printed or otherwise inscribed document and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, but does not mean money or securities;

    b.    Premises: The interior of that portion of the building at the location designated herein, which is occupied by the Insured for the Business purposes stated herein;

    c.    Money: Currency, coins, bank notes and bullion; and travelers checks, register checks and money orders held for sale to the public;

    d.    Securities: All negotiable and non-negotiable instruments or contracts representing either money or other property and includes revenue and other stamps in current use, tokens and tickets, but does not include money.

    e.    Loss: Includes damage.

The insured property may be owned by the Insured or held by him in any capacity; provided the insurance applies only to the interest of the Insured in such property, including the Insured's liability to others, and does not apply to the interest of any other person or organization in any of said property unless included in the Insured's proof of loss. The limit of the Company's liability for loss shall not exceed the actual cash value of the property at time of loss nor what it would then cost to repair or replace the property with other of like kind and quality, nor the applicable limit

of insurance stated in this endorsement; provided, as respects property specifically describe herein, the amount per article specified herein is the agreed value thereof for the purpose of this insurance.

The Company may pay for the loss in money or may repair or replace the property and may settle any claim for loss of the property either with the Insured or the owner thereof.  Any property so paid for or replaced shall become the property of the Company.  The Insured of the Company, upon recovery of any such property, shall give notice thereof as soon as practicable to the other and the Insured shall be entitled to the property upon reimbursing the Company for the amount so paid or the cost of replacement.

Application of the insurance to property of more than one person shall not operate to increase the applicable limit of insurance.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

VALUABLE PAPERS AND RECORDS
2 OF 2

Endorsement No._____28_____Additional Premium_____--_____Return Premium_____--_____

Name of Insured _____Aluminum Recovery Technology_____

## SIGNATURE PAGE

By signing and delivering the policy to you, we state that it is a valid contract.

**ACE AMERICAN INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

CARMINE A. GIGANTI, Secretary

JOHN J. LUPICA, President

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

IL 01 56 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES – CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

The **CONCEALMENT, MISREPRESENTATION OR FRAUD** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:

**1.** Concealment or misrepresentation of a material fact or

**2.** Fraud

committed by an insured at any time and relating to a claim under this policy.

 © ISO Properties, Inc.,  2001

IL 02 72 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

**(2)** 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

**(3)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b. More Than 90 Days**

If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

**(2)** 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

**(3)** 45 days before the effective date of cancellation if:

**(a)** There has been a substantial change in the scale of risk covered by this policy;

**(b)** Reinsurance of the risk associated with this policy has been cancelled; or

**(c)** You have failed to comply with reasonable safety recommendations.

© ISO Properties, Inc., 2001

**B.** The following is added to the Common Policy Conditions and supersedes any provision to the contrary.

**NONRENEWAL**

1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

   a. The expiration date of this policy, if the policy is written for a term of one year or less; or

   b. The anniversary date of this policy, if the policy is written for a term of more than one year.

2. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2001                    IL 02 72 07 02   ☐

 **STARR TECHNICAL RISKS AGENCY, INC.**

## IMPORTANT NOTICE – TO BE KEPT WITH POLICY

### WHAT TO DO WHEN A LOSS OCCURS

1. Report as soon as practicable, every incident, loss or damage which may become a claim to:

> Mr. Jim Jezewski, Vice President
> Starr Technical Risks Agency, Inc.
> Property Claims Department
> 399 Park Avenue – 9th Floor
> New York, NY  10022
> TEL: (646) 227-6348
> FAX: (212) 599-3061
> EMAIL:  Jim.Jezewski@starrcompanies.com
>
> (AND)
>
> Ms. Joanne Zajac, Vice President
> Starr Technical Risks Agency, Inc.
> 500 West Monroe Street, Suite 3100
> Chicago, IL 60661
> TEL: (312) 577-7779
> FAX: (312) 577-7820
> EMAIL:  Joanne.Zajac@starrcompanies.com

2. Starr Technical Risks Agency, Inc. claims **CANNOT** be processed through any other facility and must be reported as indicated.

3. Adjusters can **ONLY** be assigned by Starr Technical Risks Agency, Inc.